709 A.2d 849

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frederic J. JERMYN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 2, 1997.

Decided Feb. 25, 1998.

98

100

Billy H. Nolas, Philadelphia, for F. Jermyn.

Jamie Keating; Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CAPPY, Justice:

Before this court for review are Appellant Frederic J. Jermyn's challenges to the trial court's September 7, 1995 finding that he is competent to be executed and to the trial court's January 4, 1996 denial of his second petition for relief under the Post Conviction Relief Act (PCRA).[1] For the reasons which follow, we affirm both orders.[2]

This case has an extensive procedural and factual history in both the state and federal courts. A detailed factual history of the case is set forth in our opinion ruling on Jermyn's direct appeal of his judgment of sentence, *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987).

Jermyn is a diagnosed paranoid schizophrenic. He was convicted on August 16, 1985, by a jury, of first degree murder, arson, and aggravated assault in connection with the January 1, 1985 killing of his mother. At the sentencing hearing on August 17, 1985, the jury found the existence of one aggravating circumstance: that the defendant committed the killing while in the perpetration of a felony, arson.[3] The parties stipulated to the existence of the mitigating circumstance that the defendant had no significant history of prior criminal convictions.[4] In addition, the trial judge instructed the jury on all of the remaining potential mitigating circumstances, and left it to the jury to determine which mitigating circumstances existed. As mitigating circumstances, the jury found: the defendant was under the influence of extreme mental or emotional disturbance;[5] and "other" evidence in mitigation concerning the character and record of the defen-

1. The Act of May 12, 1982, P.L. 417, No. 122, 42 Pa.C.S. § 9541 *et seq.*, as amended, April 13, 1988. We note that Jermyn's second petition for PCRA relief was filed prior to the effective date of the 1995 amendments to the PCRA.

2. Although the parties did not request consolidation of these two appeals, we have opted to treat them together for disposition.

3. 42 Pa.C.S. § 9711(d)(6).

4. 42 Pa.C.S. § 9711(e)(1).

5. 42 Pa.C.S. § 9711(e)(2).

dant and the circumstances of his offense.[6] The jury did not find present the mitigating factor that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.[7] After weighing the aggravating and mitigating circumstances, the jury returned a verdict of death.

After Jermyn's post-verdict motions were denied, Jermyn was sentenced to death on the first degree murder conviction on April 15, 1986.[8] This court affirmed Jermyn's convictions and judgments of sentence on direct appeal. *See Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). We subsequently affirmed the trial court's dismissal of Jermyn's first PCRA petition. *See Commonwealth v. Jermyn*, 533 Pa. 194, 620 A.2d 1128 (1993).

Jermyn's execution was scheduled for the week of December 6, 1993. The trial court denied his petition for a stay of his execution. In an opinion issued January 18, 1995, we rejected Jermyn's appeal of this stay denial, concluding that there was sufficient evidence in the record to support the trial court's finding that Jermyn is competent to be executed pursuant to *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).[9] *See Commonwealth v. Jermyn*, 539 Pa. 371, 652 A.2d 821 (1995).

Subsequently, a Governor's Warrant for Jermyn's execution was issued on July 12, 1995, scheduling Jermyn's execution for the week of September 10, 1995. Jermyn sought a stay of his scheduled execution in the trial court; this petition was denied on August 16, 1995.

**6.** 42 Pa.C.S. § 9711(e)(8).

**7.** 42 Pa.C.S. § 9711(e)(3).

**8.** Jermyn was also sentenced to a concurrent ten-to-twenty year prison term on the arson conviction, and a five-to-ten year term on the aggravated assault count, to run consecutive to the arson sentence and concurrently with the sentence of death.

**9.** In *Ford v. Wainwright,* the United States Supreme Court held that the United States Constitution forbids the practice of executing an individual who is determined to be insane. *Ford v. Wainwright* dictates that it is abhorrent to execute one whose mental illness prevents him from comprehending the reasons for the death penalty or its implications.

Jermyn then filed with this court his Application for Extraordinary Relief to Stay a Warrant of Execution. We granted Jermyn's request for extraordinary relief to the extent necessary to determine whether Jermyn suffers from a mental illness which prevents him from comprehending the reasons for the death penalty or its implications. In our order issued on August 31, 1995, we directed the trial court to hold a *Ford v. Wainwright* hearing, at which a court appointed psychiatrist was directed to testify as the court's witness; we further directed the trial court to make its finding on Jermyn's competence to be executed no later than September 8, 1995.

The trial court held a *Ford v. Wainwright* hearing on September 6, 1995, at which Jermyn was present and represented by his current appellate counsel. The trial court filed its finding that Jermyn is competent to be executed on September 7, 1995.

Jermyn also filed his second counseled PCRA petition (hereinafter "PCRA petition") on September 5, 1995.[10] This court, by an order issued September 12, 1995, granted Jermyn's Emergency Motion for Stay of Execution, and extended jurisdiction to the trial court to decide the issues raised in Jermyn's PCRA petition in an expedited fashion. Pursuant to our order, the trial court held evidentiary hearings on this PCRA petition October 17, 1995 and November 16, 1995. Subsequently, the trial court, by an order dated January 4, 1996, denied Jermyn's request for PCRA relief.

Both the trial court's September 7, 1995 finding that Jermyn is competent to be executed and the trial court's January 4, 1996 denial of his PCRA petition are presently before this court for review. The parties submitted their briefs on January 2, 1997.[11]

10. Jermyn also filed a petition for habeas corpus in the United States District Court for the Middle District of Pennsylvania on September 1, 1995. The federal district court ultimately dismissed this habeas corpus petition without prejudice, for lack of exhaustion, on December 8, 1995.

11. We are hereby granting the Commonwealth's requests for leave to submit a corrected page 51 of its brief and to submit its surreply brief.

■ In his challenge to the trial court's finding that he is competent to be executed, Jermyn first argues that there is insufficient evidence in the record from the *Ford v. Wainwright* hearing to support this finding.

The trial court heard the testimony of three board certified psychiatrists at Jermyn's *Ford v. Wainwright* hearing on September 6, 1995. Abram M. Hostetter, M.D., testified as the court's witness. Kate Erwin, M.D., testified on behalf of the defense. Stefan P. Kruszewski, M.D., testified on behalf of the Commonwealth.

Dr. Hostetter examined Jermyn in November of 1993. He later examined Jermyn on July 22, 1995. During Dr. Hostetter's July 1995 examination, Jermyn was uncooperative and vulgar, and refused to answer many of Dr. Hostetter's questions, but he was aware of the order setting the date of his execution and the date thereof. Jermyn had delusions about the intentions of the physicians who are treating his medical condition. During Dr. Hostetter's July 1995 examination, however, Jermyn was oriented as to time and place and was able to recount where he had been in the past few months. When asked about the reason for his execution, Jermyn refused to answer Dr. Hostetter. Dr. Hostetter opined at the *Ford v. Wainwright* hearing that Jermyn understands that the death penalty has been ordered in his case; that Jermyn has an understanding of the reason for the order for his execution; and that Jermyn understands that, after his execution, he will be dead.

Dr. Hostetter testified on cross examination by the defense that paranoid schizophrenia has periods of exacerbation and remission, so Jermyn's thought processes can range from actively psychotic and disorganized, to close to normal; there is no way of predicting Jermyn's mental state on the day of execution.

Dr. Kruszewski examined Jermyn in the fall of 1993. Dr. Kruszewski also examined Jermyn on August 6, 1995, at which

We also are hereby denying Jermyn's request, made in his brief, for oral argument on the issues raised therein.

time Jermyn was extremely uncooperative because he knew that Dr. Kruszewski was conducting his examination on behalf of the Commonwealth. It is Dr. Kruszewski's expert opinion that, although Jermyn has a mental illness, he understands the death penalty and the reasons for its imposition in his case.

Dr. Erwin examined Jermyn in the fall of 1993. She did not conduct an examination of Jermyn in the summer of 1995. Dr. Erwin explained in her testimony that Jermyn's chronic paranoid schizophrenia is marked by delusions which have remained fairly constant over time. She also testified that Jermyn experiences auditory hallucinations, lives in a state of denial, and refuses treatment. Dr. Erwin further indicated in her testimony that Jermyn stated to her during her examination in the fall of 1993 that his mother was still alive, and that, although he understood that a warrant for his execution could be signed, he believed executions are illegal in this Commonwealth.

Dr. Erwin further testified concerning a summary for Jermyn prepared by a psychiatrist at the mental health unit at State Correctional Institute (SCI) Frackville in July of 1995 upon Jermyn's discharge from that facility after the issuance of Jermyn's death warrant. Dr. Erwin testified that the discharge summary indicates Jermyn is delusional and practices denial. She further indicated that the discharge summary states that Jermyn believes his mother is still alive, refuses to believe he has a death sentence, and refuses to take his antipsychotic medications. It is Dr. Erwin's expert psychiatric opinion that, because of his mental illness, Jermyn does not understand the reasons for his execution.

The trial court recognized the expert psychiatric testimony of all three psychiatrists and noted that, although Jermyn impeded the examinations conducted by Dr. Hostetter and Dr. Kruzsewski, they had a full knowledge of Jermyn's mental health history. The trial court indicated that Jermyn had appeared calm before the court and had answered the court's questions in a cooperative manner. Based on all of the testimony and evidence, the trial court found that Jermyn's

mental illness does not prevent him from comprehending the reasons for the death penalty or its implications.

The record shows that the trial court's finding that Jermyn is competent to be executed pursuant to *Ford v. Wainwright* is supported by the expert testimony of both Dr. Hostetter and Dr. Kruszewski. There is, thus, sufficient evidence in the record to support the trial court's finding.

Next, Jermyn asserts that the trial court made several rulings which unconstitutionally prevented him from presenting evidence, contrary to the guarantees set forth in the Eighth and Fourteenth Amendments of the United States Constitution.

■ Reviewing these rulings, the record shows that at the conclusion of Dr. Erwin's testimony, defense counsel sought to have the trial court order Dr. Erwin to examine Jermyn on the day of the *Ford v. Wainwright* hearing. Dr. Erwin, on the advice of counsel, refused to voluntarily conduct the examination because of her employment status with the Commonwealth. Noting defense counsel's objection for the record, the trial judge refused to order Dr. Erwin to undertake the examination. Defense counsel then indicated his desire for a continuance so he could have another psychiatrist examine Jermyn. The trial court refused this request. The trial court also refused to grant the defense a continuance so that it could explore Jermyn's voluminous Department of Corrections file, noting this court's September 8, 1995 time constraint.

Had the trial court ordered Dr. Erwin, or any other psychiatrist, to examine Jermyn contemporaneously with the September 6, 1995 hearing, the best result for the defense would have been an expert opinion which confirmed that of Dr. Erwin. Dr. Erwin had examined Jermyn in the fall of 1993 and did not conduct an examination of him in the summer of 1995. Dr. Hostetter and Dr. Kruszewski had examined Jermyn fairly close in time to the September 6, 1995 hearing, with Dr. Hostetter examining Jermyn on July 22, 1995, and Dr. Kruszewski examining him on August 6, 1995. The trial court had before it the testimony of Dr. Hostetter that the

nature of Jermyn's mental illness is such that his thinking is never without some abnormalities, and that he may be more actively psychotic on any one day as opposed to another day. The trial court's refusal to order an examination of Jermyn by either Dr. Erwin or some other expert contemporaneously with the competency hearing, if error at all, was harmless error. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

■ Additionally, Jermyn's counsel indicated to the trial court that he had just received Jermyn's Department of Corrections medical records and had not had an opportunity to read these records at the time of the September 6, 1995 hearing. Counsel indicated that he would request a continuance but expected that the trial judge would rule against him because of this court's September 8, 1995 time constraint. The trial judge indicated that he would have allowed a continuance, but was not going to do so in view of the September 8, 1995 time constraint. While this ruling might seem unduly restrictive of Jermyn's defense, his counsel has now had an opportunity for over one year between the trial court's ruling and his filing of Jermyn's brief with this court in which to examine Jermyn's Department of Corrections medical records. Jermyn has included in his brief to this court excerpts taken from Jermyn's Department of Corrections medical records after the defense's thorough review of these records. Jermyn points to portions of these records which indicate that he is a paranoid schizophrenic who suffers from delusions; that he refuses to take his medications and believes his physicians are trying to hurt him; that he believes his mother is still alive; and that he refuses to believe he has a death sentence. These excerpts pertain to evidence which the trial court already had before it by way of the expert testimony at the *Ford v. Wainwright* hearing. Jermyn thus points to no different information which would have justified a continuance. The trial court's refusal to allow defense counsel a continuance in order to thoroughly review Jermyn's medical records was, therefore, harmless error at best. *Story, supra.*

Jermyn also claims that the trial court improperly required him to prove his incompetency to be executed by a clear and convincing evidence standard which has been ruled unconstitutional in *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).[12] Jermyn asserts that, at the time of his September 6, 1995 *Ford v. Wainwright* hearing, the prevailing standard in Pennsylvania case law was that an accused had to produce clear and convincing evidence of his incompetency.

The cases cited by Jermyn imposing a clear and convincing evidence standard involved allegations of incompetency to stand trial pursuant to the provisions of the Mental Health Procedures Act (MHPA).[13] In particular, the cases which Jermyn relies upon addressed sections 402, 50 P.S. § 7402,[14] and 403(a), 50 P.S. § 7403(a), of the MHPA, prior to their amendment in 1996.[15] *See Commonwealth v. Sam*, 535 Pa.

12. The United States Supreme Court held in *Cooper* that an Oklahoma statute which provided that an accused was presumed to be competent to stand trial, unless the accused proved his incompetence by clear and convincing evidence, violated the accused's right to due process under the Fourteenth Amendment of the United States Constitution.

13. Act of July 9, 1976, P.L. 817, as amended, 50 P.S. § 7101 *et seq.*

14. At the time of Jermyn's *Ford v. Wainwright* hearing, section 402 of the MHPA provided:

Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a). Section 402(d) addressed when a hearing is required under the MHPA, and formerly provided:

The court, either on application or on its own motion, may order an incompetency examination at any stage in the proceedings and may do so without a hearing unless the examination is objected to by the person charged with a crime or his counsel. In such event, an examination shall be ordered only after determination upon a hearing that there is a prima facie question of incompetency.

50 P.S. § 7402(d). We note that an amendment effective July 2, 1996 added to section 402(d) a preponderance of the evidence standard.

15. At the time of Jermyn's *Ford v. Wainwright* hearing, section 403(a) provided:

The moving party shall have the burden of establishing incompetency to proceed by clear and convincing evidence. The determination shall be made by the court.

50 P.S. § 7403(a).

350, 635 A.2d 603 (1993); *Commonwealth v. Logan*, 519 Pa. 607, 549 A.2d 531 (1988); and *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

 This court made clear in our January 18, 1995 opinion that the MHPA was inapplicable to the execution stage of Jermyn's case. *See Commonwealth v. Jermyn*, 539 Pa. at 376, 652 A.2d at 823, when we stated:

Appellant has already been tried convicted, sentenced, exhausted his direct and collateral state appeals, and a death warrant has been issued. The Mental Health Procedures Act was inapplicable to this proceeding....

Moreover, our January 18, 1995 opinion, in concluding that the lower court's findings that Jermyn comprehends the reasons for the death penalty and its implications were based on sufficient evidence, did not impose a clear and convincing standard on Jermyn. There is no basis in the record for us to presume that the trial court disregarded our opinion at Jermyn's *Ford v. Wainwright* hearing and applied the clear and convincing standard which was formerly applied under the MHPA. This court thus rejects Jermyn's argument.

We next turn to Jermyn's appeal of the trial court's denial of his second counseled PCRA petition. Regarding second or subsequent petitions for PCRA relief such as we have in the instant matter, we have held:

a second or subsequent petition for post-conviction relief will not be entertained "unless a strong prima facie showing

The amendment to section 403(a) of the MHPA, 50 P.S. § 7403(a), effective July 2, 1996, provides:

Except for an incompetency examination ordered by the court on its own motion as provided for in section 402(d), the individual making an application to the court for an order directing an incompetency examination shall have the burden of establishing incompetency to proceed by a preponderance of the evidence. The determination shall be made by the court.

50 P.S.§ 403(a)(footnote omitted). We note that, pursuant to the 1996 amendment, this court has ruled that a defendant asserting he is incompetent to stand trial has the burden to prove his assertion by a preponderance of the evidence. *See Commonwealth v. duPont*, 545 Pa. 564, 681 A.2d 1328 (1996).

is offered to demonstrate that a miscarriage of justice may have occurred."

This standard is met if the petitioner can demonstrate either: (a) that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate, or (b) that he is innocent of the crimes charged.

*Commonwealth v. Szuchon,* 534 Pa. 483, 487, 633 A.2d 1098, 1099–1100 (1993) (citation omitted).

■ There was no argument to the PCRA court that Jermyn is innocent of the killing of his mother. The PCRA court denied Jermyn's petition on the basis of its finding that in this matter, there was no miscarriage of justice which no civilized society can tolerate. Our standard of review for an order denying post-conviction relief is limited to whether the trial court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Lutz,* 492 Pa. 500, 424 A.2d 1302 (1981).

■ Jermyn filed his second counseled PCRA petition on September 5, 1995, and, thus, prior to the effective date of the 1995 amendments to the PCRA. The pre-amendment PCRA requires Jermyn to establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the errors or defects listed in 42 Pa.C.S. § 9543(a)(2),[16] and that the issues he raises have not been previously litigated.[17] If Jermyn can show that the issues have not been previously litigated, he must also show that

16. Prior to the amendment of the PCRA which took effect on November 17, 1995, section 9543(a)(2) set forth only three provisions which could have any application to this appeal: section 9543(a)(2)(i), (a)(2)(ii), and (a)(2)(v). The errors and defects listed in these subsections refer to ineffective assistance of counsel and violations of the United States or Pennsylvania Constitutions.

17. Prior to the 1995 amendments to the PCRA, section 9544(a) provided that an issue has been previously litigated if the highest appellate court in which an appellant could have had review has ruled on the merits of the issue, or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa. C.S. § 9544(a).

these allegations of error have not been waived [18] or, if waived, the conditions in either § 9543(a)(3)(ii) or (iii) have been met.[19] *See Commonwealth v. Travaglia,* 541 Pa. 108, 117, 661 A.2d 352, 356 (1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).[20]

Jermyn raises a number of challenges to denial of his second PCRA petition, including ineffectiveness of his trial, sentencing, post-conviction, and previous appellate counsel. Regarding Jermyn's ineffectiveness claims, this court has previously explained:

> To obtain relief on a claim of ineffective assistance of counsel, Appellant is required to show that there is merit to the underlying claim; that counsel had no reasonable basis for his course of conduct; and finally, that there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different.

*Commonwealth v. Jones,* 546 Pa. 161, 175, 683 A.2d 1181, 1188

**18.** As applicable to the instant matter, section 9544(b) of the PCRA, 42 Pa.C.S. § 9544(b), provided that an issue has been waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, on appeal in a habeas corpus proceeding or other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter."

**19.** Subsections 9543(a)(3)(ii) and (iii) provided:
(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.
(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.
42 Pa.C.S. § 9543(a)(3)(ii) and (iii).

**20.** In *Travaglia,* relying on *Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38 (1994), we stated that this court has addressed all issues arising in a death penalty case, irrespective of a finding of waiver. In the present case, the Commonwealth urges this court to reexamine the appropriateness of relaxing waiver. As there are no issues in this case for which we are applying such a relaxed waiver standard, the case *sub judice* is not the proper vehicle for us to reexamine this practice. We thus do not address the Commonwealth's argument herein.

(1996).[21] Appellant bears the burden of proving all three prongs of this standard. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992).[22]

■ First, Jermyn contends, relying on *Commonwealth v. Perry*, 537 Pa. 385, 644 A.2d 705 (1994), that his trial counsel rendered ineffective assistance at the penalty phase, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, because counsel was deficient in investigating and presenting evidence in mitigation of the death penalty. Jermyn asserts that, had his trial counsel conducted a proper and thorough investigation, counsel would have discovered that Jermyn's aunt, Esther Isralow, who is the victim's sister, and her daughter, Sharon Isralow, would have been willing to testify concerning Jermyn's traumatic childhood and his mental illness. Jermyn has appended affidavits of both Esther Isralow and Sharon Isralow as exhibits to his brief.[23] Jermyn has also appended to his brief as exhibits a number of affidavits of mental health professionals who have made an assessment of his mental illness and the

21. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984), which states:

When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer, including an appellate court, to the extent it independently reweighs the evidence— would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*See also Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

22. We note that the Commonwealth, relying on *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877 (1995), argues that we should not address any of Jermyn's claims insofar as they relate to ineffective assistance of his prior PCRA counsel because this court has adopted federal case law which holds that under the United States Constitution, the accused has a constitutional right to counsel on direct appeal but does not have a right to counsel in state collateral proceedings. The Commonwealth reads *Christy* too broadly; *Christy* dealt *only* with "collateral counsel claims" under the United States Constitution, not the Pennsylvania Constitution. As this issue has not been resolved under the Pennsylvania Constitution or the PCRA statute, however, we have addressed all of Jermyn's ineffectiveness claims herein. *See Travaglia*, 541 Pa. at 139, 661 A.2d at 367.

23. *See* Appellant's brief Exhibits 4 and 7.

role of his traumatic childhood in the formation of this illness.[24] Jermyn also asserts that his trial counsel, at the sentencing phase of his trial, should have relied upon information concerning schizophrenia set forth in a textbook, Kaplan & Sadock, *Comprehensive Textbook of Psychiatry*, Fourth Ed., and should have used Jermyn's records from the Veteran's Administration and the Scotland School bearing on his mental health history. Additionally, Jermyn contends that the testimony of his childhood friend, Reverend Charles Falk, during the guilt phase of his trial, was not sufficient to describe the "hell" that Jermyn suffered as a youth.[25]

The PCRA court heard testimony of Sharon Isralow and Esther Isralow, as well as Jermyn's trial counsel, Gary Lysaght, Esq., and his legal assistant, Nicholas Ressetar, whose affidavits are appended as exhibits to Jermyn's brief.[26] Four of the mental health experts who had examined Jermyn, Dr. Phillips, Dr. Dee, Dr. Toomer, and Dr. Fleming, also testified before the PCRA court.

Dr. Phillips is a board certified psychiatrist retained by defense counsel who examined Jermyn prior to his trial and who testified at Jermyn's trial in support of an insanity defense. Dr. Phillips testified at the hearing before the PCRA court that, at the time of the penalty phase of Jermyn's trial, he was prepared to offer his opinion in mitigation of the death sentence. Dr. Phillips would have offered the following opinions at the penalty phase: that Jermyn's mental illness resulted from his traumatic childhood; that, at the time Jermyn killed his mother, Jermyn was under the influence of extreme mental and emotional disturbance;[27] and that Jermyn's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was

---

**24.** *See* Appellant's brief Exhibits 1–3, 5–6, 8–9, affidavits of Dr. Hostetter; Dr. Anthony Semone; Dr. Jethro Toomer; Dr. Paul Phillips; Dr. Richard Dudley; Dr. Henry Dee; and Dr. Patricia Fleming.

**25.** *See* Appellant's brief Exhibit 19.

**26.** *See* Appellant's brief Exhibits 11–12.

**27.** The PCRA court notes in its opinion that this would have been a mitigating circumstance pursuant to 42 Pa.C.S. § 9711(e)(2).

substantially impaired.[28] Dr. Phillips testified before the PCRA court that he had attempted to consult with Jermyn's trial counsel regarding the penalty phase prior to that phase of Jermyn's trial, but counsel put him off.

Jermyn's trial counsel testified to the PCRA court that he should have called Dr. Phillips to testify at the penalty phase but failed to do so because counsel was inadequately prepared.

Drs. Dee, Toomer, and Fleming, all of whom are clinical psychologists, likewise opined at the PCRA hearing that the events of Jermyn's traumatic childhood significantly contributed to his mental illness and that his mental illness was a factor in his character. These experts testified at the PCRA hearing that at the time Jermyn killed his mother, he was under the influence of extreme mental or emotional disturbance, and this disturbance substantially impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Upon a consideration of all of the testimony, the PCRA court concluded that Jermyn had not met the three prong test for ineffective assistance of counsel. The PCRA court pointed out that unlike the counsel involved in *Perry*, Jermyn's trial counsel presented witnesses in the penalty phase, including Jermyn's friend, Gloria Seiler, and a Cumberland County prison employee, both of whom testified on Jermyn's behalf. Counsel also presented detailed Veteran's Administration records concerning Jermyn's mental health history which were sent out with the jury for use during its deliberations along with an index to these records prepared by defense counsel. Further, the PCRA court points out that counsel reminded the jury of the testimony at the guilt phase of Jermyn's trial of Jermyn's childhood friend Reverend Falk, who testified concerning Jermyn's traumatic childhood with his parents and about Jermyn's having been sent away to the Scotland School as a young teen by his mother, and the effect such a decision would have had on Jermyn. Jermyn's trial counsel beseeched the jury to not lose sight of the testimony he had presented

---

28. The PCRA court notes in its opinion that this would have been a mitigating circumstance pursuant to 42 Pa.C.S. § 9711(e)(3).

regarding Jermyn's socially "screwed up" family upbringing and his mental illness, pointing to testimony concerning specific acts of Jermyn's father toward Jermyn which could have traumatized Jermyn as a youth. The PCRA court stated that with all of the mitigating evidence presented, the only mitigating factor presented which the jury did not find was that Jermyn's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

Although the PCRA court found that there was a *possibility* that the jury might have rendered a verdict of life imprisonment in the penalty phase had it heard more mitigating evidence concerning Jermyn's traumatic childhood and his mental illness from the Isralows and Dr. Phillips, the PCRA court stated, "to say that there is a *reasonable probability* that but for the omissions of trial counsel the outcome of the penalty phase would have been different, is not something that we can conclude." (Slip op., January 4, 1996, at p. 37) (emphasis in original). Further, the PCRA court added that, even if there were such a reasonable probability, in this matter, the miscarriage of justice test was not met.

Jermyn argues that, since the PCRA court concluded there was a possibility that the jury might have rendered a life imprisonment verdict, this should have satisfied the third prong of the ineffectiveness standard.

We disagree. The PCRA court's conclusion that the outcome of the penalty phase of Jermyn's trial might have been different had more mitigating evidence been offered does not render legally erroneous the PCRA court's conclusion that, although this possibility exists, it is not a reasonable probability. While the testimony which Jermyn would now like to have seen offered would have provided the jury with more detailed incidents of his childhood trauma and his mental illness, defense counsel presented the jury with ample evidence to make the jury aware of the considerations of Jermyn's traumatic childhood and his mental illness. As Jermyn's counsel reminded the jury in his closing argument at the penalty phase, they had heard a great deal of testimony regarding

Jermyn's traumatic childhood at the hands of his parents and about his mental illness. Given all of the mitigating evidence presented by Jermyn's trial counsel at the penalty hearing and his vigorous efforts to defend Jermyn in this case, we find no legal error on the part of the PCRA court in distinguishing *Perry*[29] and concluding that there was no miscarriage of justice here.

Next, Jermyn argues that he was denied effective assistance of counsel at the guilt phase of his trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, because, had his trial counsel been better prepared, he could have offered the additional information discussed in the preceding issue, concerning Jermyn's traumatic childhood and mental health history, at the guilt phase in relation to the defenses of insanity and diminished capacity which were presented. Jermyn contends that the PCRA court erred in not holding an evidentiary hearing to specifically address this claim, and he requests this court to remand this issue for a full evidentiary hearing or order a new trial.

Although the PCRA court does not directly address this issue in its opinion, given the PCRA court's analysis of the preceding issue, we do not find a remand on this issue necessary. The record shows that trial counsel placed the issue of Jermyn's insanity before the jury and presented evidence to support that defense. Trial counsel also presented the testimony of Reverend Falk concerning Jermyn's traumatic childhood, detailed with a few incidents between Jermyn and his parents about which Reverend Falk was aware. Re-

29. *Perry* was a direct appeal from a death sentence in which the appellant argued that his defense counsel had been inexcusably derelict in his representation. This court in *Perry* vacated the judgment of sentence and remanded for a new trial, finding:

> a reasonable probability that counsel's failure to interview his own client, failure to investigate a potential eyewitness, gross inattention to the capital nature of his client's plight, failure to prepare for the penalty phase of trial, failure to present known character witnesses, and presentation of such a pitiful parody of a defense case at the penalty hearing, in combination, affected the outcome of the trial. *Perry*, 537 Pa. at 392, 644 A.2d at 709 (footnote omitted).

verend Falk testified that Jermyn's father beat him, that Jermyn's family situation was strange, and that Jermyn had been sent away to the Scotland School as a youth. In his closing argument to the jury, Jermyn's defense counsel vigorously reminded the jury of Dr. Phillips' testimony concerning Jermyn's mental illness. While defense counsel could have rounded out the picture of Jermyn's traumatic youth and family life and its effect on his mental illness with more testimony, such as that of the Isralows or mental health professionals other than Dr. Phillips, counsel did make the jury aware of Jermyn's traumatic life with his parents and his mental illness in relation to the insanity defense. Any additional evidence, therefore, would have been cumulative; thus, counsel is not ineffective for failing to present additional evidence. *See Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305 (1996). Jermyn has failed to establish that there is a reasonable probability that, but for his trial counsel's alleged failure to more fully present evidence on his defense of insanity or diminished capacity, the outcome of his trial would have been different. Further, he has failed to establish that there was a miscarriage of justice in this matter.

The next issue raised by Jermyn is that he was denied a fair trial in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the "corresponding provisions" of the Pennsylvania Constitution, because of an alleged conflict of interest on the part of the Cumberland County District Attorney, J. Michael Eakin, (now Honorable J. Michael Eakin of the Superior Court), in prosecuting his case. Jermyn contends that because of this alleged conflict of interest, he should be awarded a new trial.

Jermyn's brief, through the supporting affidavit of Mr. Ressetar, which is Exhibit 12 to Jermyn's brief, asserts that J. Michael Eakin, Esq., was the District Attorney of Cumberland County who oversaw Jermyn's prosecution. Jermyn further asserts that J. Michael Eakin, Esq., was initially appointed executor of the estate of Jermyn's mother, through the will which he drafted for her. Jermyn acknowledges that, after

assuming his prosecutorial role with regard to Jermyn, J. Michael Eakin passed his executor's duties to his law partner, who was his father. Additionally, Jermyn claims that Jermyn attempted to challenge his mother's will, but was barred by the trial court under the Slayer's Act [30], because of his criminal conviction. Based on these averments, Jermyn asserts that the district attorney and the elder Mr. Eakin somehow stood to financially gain from Jermyn's criminal conviction in their involvement in the decedent's will, and that J. Michael Eakin, accordingly, should not have been involved in prosecuting Jermyn, relying on, *inter alia, Commonwealth v. Eskridge,* 529 Pa. 387, 604 A.2d 700 (1992).

Jermyn acknowledges that his trial counsel raised this conflict of interest issue prior to trial, and that the trial court found no conflict.[31] Jermyn then contends that, although his trial counsel raised this conflict of interest issue in post-verdict motions, all subsequent counsel rendered ineffective assistance in failing to pursue this issue. The affidavit of Attorney Lysaught's legal assistant, Mr. Ressetar, indicates that post-conviction and appellate counsel for Jermyn have had personal ties to the District Attorney's office and to the Cumberland County Common Pleas Court judges. Mr. Ressetar suggests these ties are the reasons why counsel would have failed to pursue this conflict issue.

In *Eskridge,* the district attorney's office was prosecuting the appellant on charges relating to an automobile accident which was the basis for civil suits in which the district attorney's private law partners represented the victims. The issue in *Eskridge* was whether the district attorney had an impermissible conflict of interest which prohibited the appellant's prosecution by the district attorney's office. This court found in *Eskridge* that the successful prosecution of the appellant would have facilitated the success of the district attorney's private law firm in the civil actions, and, thus, that the district attorney had a direct financial interest in obtaining a conviction in the appellant's case. Unlike the situation in

30. Act of June 30, 1972, P.L. 508, 20 Pa.C.S. § 8802.
31. See 36 Cumberland L.J. 465, 480–82 (1986).

*Eskridge,* Jermyn has not shown that the prosecutor in this matter had any pecuniary interest which was dependent on the outcome of the prosecution of Jermyn.

Jermyn does not demonstrate a reasonable probability that, but for his counsel's omission in not pursuing this conflict of interest issue, the outcome of the proceeding would have been different; thus, he fails to establish his ineffectiveness claims. We agree with the PCRA court's conclusion that there was no miscarriage of justice because of J. Michael Eakin's prosecutorial role with regard to Jermyn.

▮▮▮ Jermyn next argues, relying on *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), that the trial court should have *sua sponte* ordered a hearing on Jermyn's competency to stand trial because the court had reason to doubt Jermyn's competence. Jermyn asserts that the trial court found that Jermyn was not competent to represent himself. On the basis of the trial judge's ruling on Jermyn's request for self-representation, relying on *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), and *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995), Jermyn further asserts that this finding amounted to a finding on the part of the trial court that he was not competent to stand trial. Jermyn asserts that his prior counsel were ineffective for failing to raise these defects in his trial; that a full PCRA evidentiary hearing on this issue was required; and that a new trial is warranted.

In relation to this issue, again relying on *Starr,* Jermyn also contends that, if he was competent at the time of trial, the trial court denied him of his right to self-representation, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Pennsylvania Constitution, and that a new trial is warranted. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975),[32] and *Commonwealth v. Szuchon,*

32. The United States Supreme Court in *Faretta* held that a defendant in a state criminal trial has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, to proceed without counsel when he voluntarily and intelligently elects to

506 Pa. 228, 484 A.2d 1365 (1984).[33]

The United States Supreme Court, in its 1993 decision in *Godinez,* held that the competency standard for pleading guilty or waiving the right to counsel is not higher than the competency standard for standing trial. Subsequently, in *Starr,* which was a capital case before this court on direct appeal, the appellant had been found competent to stand trial by a psychiatrist who examined him prior to trial. The appellant in *Starr* had filed a pre-trial motion to waive his right to the assistance of counsel at trial and to represent himself. The trial court judge before whom the appellant initially was to be tried, after a hearing on the appellant's motion and a probing *Faretta* colloquy, permitted the appellant to proceed *pro se* and ordered standby counsel. After transfer of the trial to a second trial court judge, the second judge revoked the first trial court judge's order and directed standby counsel to assume control of the appellant's defense at trial and sentencing. The appellant in *Starr* was convicted of first degree murder and sentenced to death.

On appeal in *Starr,* this court addressed the question of whether the second trial court erred when it revoked the appellant's right to represent himself by rescinding the first trial court's order. Relying on *Faretta* and *Szuchon,* we recognized in *Starr* that before a defendant is permitted to proceed *pro se,* he must first demonstrate through a *Faretta* colloquy that he knowingly, voluntarily and intelligently waives his constitutional right to the assistance of counsel.

This court held in *Starr* that the second trial court erred in denying the appellant the right to represent himself without any substantive basis in fact or law. In reaching this conclusion in *Starr,* relying on *Godinez,* we stated:

> proceed *pro se,* if he has a full understanding of the consequences of his decision.

**33.** In *Szuchon,* this court stated that it is clear that pursuant to the Sixth Amendment to the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution, that a defendant has a constitutionally guaranteed right to be represented by counsel of his own choosing.

since the standard for evaluating a criminal defendant's ability to stand trial and ability to waive counsel are precisely the same, if the second trial court was correct in finding that appellant was "incapable of waiving the assistance of counsel," the trial court should have also found that appellant was incapable of standing trial. *See* 50 P.S. § 7402 (the trial court, either on application or on its own motion, may order a competency examination at any stage in the proceedings). *See also Drope, supra,* 420 U.S. at 180–181, 95 S.Ct. at 908–909 (a competency determination is necessary when a trial court has reason to doubt the defendant's ability to understand the proceedings). If on the other hand, the trial court erred in finding that appellant was incapable of waiving counsel, the trial court erred in denying appellant his right to *pro se* representation. In either case, the second trial court erred.

*Starr,* 541 Pa. at 589–90, 664 A.2d at 1339 (footnote omitted).

The record in the case *sub judice* does not reflect the same situation as was present in *Starr.* In the present case, trial counsel asked Dr. Phillips to conduct a psychiatric examination of Jermyn in connection with Jermyn's trial to determine his mental state at that time. Jermyn proceeded to trial with counsel representing him. When the defense commenced putting on its case at trial, Jermyn requested to jointly represent himself along with counsel, so that Jermyn could call witnesses and question them. This request was denied. (*See* N.T. Jury Trial, 8/12–17/85, p. 313.)

At the close of the defense's case, trial counsel requested at sidebar, on Jermyn's behalf and against counsel's advice, that Jermyn be permitted to remove counsel from any further participation. The trial judge ruled on the record as follows:

I'm not going to pursue that, I'm going to deny it. Let the record show he has placed in evidence a sanity defense, that he is insane, that under the circumstances, at this late stage of the trial, I feel as a matter of law to go into a longrange colloquy with him to determine whether or not he could competently represent himself, on the facts as I know them and on the evidence in the record, he cannot competently

defend himself. I make that finding of fact. The motion is denied and you should so advise him.

(N.T. Jury Trial, p. 414).

Jermyn points to nothing which occurred during trial, aside from the judge's ruling on his request to remove his counsel, to establish that he was incompetent to stand trial and that the trial court should have held a hearing on that issue. Jermyn's brief quotes only a portion of the trial court's ruling, and removes this excerpt from its context, to argue that the trial judge made a ruling on Jermyn's mental competency based on Jermyn's behavior at trial. This is not an accurate reading of the record. The trial judge ruled that at the close of the defense's case, the court was not going to conduct a probing *Faretta* colloquy on whether Jermyn's decision to waive assistance of counsel at that point in the trial was knowing, voluntary, and intelligent. The logical inference from the trial judge's comments is that, given the nature of the defense, the defendant was not sophisticated enough to represent himself sufficiently. To characterize this brief statement as a ruling on Jermyn's competence to be tried is to focus on one word, "competent", rather that the context in which it was spoken.

The PCRA court concluded that there was no merit to Jermyn's contentions that defense counsel was ineffective for failing to bring to the attention of the trial court Jermyn's incompetency to stand trial and that the trial court should have sua sponte ordered a competency hearing during the proceedings in this case. The PCRA court ruled that Jermyn failed to show that a miscarriage of justice occurred in this regard. We agree with the PCRA court.[34]

34. The Dissenting Opinion authored by Mr. Chief Justice Flaherty, relying on *Godinez* and *Starr*, recognizes the legal correctness of the argument advanced by Jermyn that, *if* he was determined by the trial judge to be incompetent to represent himself, then he also was not competent to stand trial. Critical to the success of Jermyn's argument, however, is whether the trial judge made a determination on Jermyn's competency to represent himself. While the judge's statement on the record, to which Jermyn points and the dissent relies, was "he cannot competently defend himself", (N.T. Jury Trial, p. 414), we cannot agree

Additionally, relying on *Commonwealth v. Owens,* 496 Pa. 16, 24 n. 6, 436 A.2d 129, 133 n. 6 (1981), and *Sapienza v. Vincent,* 534 F.2d 1007 (2d Cir.1976), the PCRA court concluded there was no arguable merit to Jermyn's argument that defense counsel was ineffective for failing to object to the trial court's failure to conduct a colloquy, pursuant to *Faretta,* before ruling on Jermyn's request to remove his trial counsel and proceed *pro se.* The PCRA court concluded that no miscarriage of justice occurred.

We agree with the PCRA court's conclusions. This court has indicated that where an accused does not request to represent himself before trial, the constitutional right to self-representation recognized in *Faretta* is not implicated. *See Owens,* 496 Pa. at 16 n. 6, 436 A.2d at 133 n. 6. We stated in *Owens,* "[w]hen, during the course of trial, an accused wishes to dismiss counsel and either represent himself or obtain new counsel, his request is addressed to the sound discretion of the court." *Id.* (*citing, inter alia, United States v. Dunlap,* 577 F.2d 867, 868–69 (4th Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 174, 58 L.Ed.2d 166 (1978); *Sapienza, supra* ).

██ Jermyn contends that the PCRA court in the instant matter erroneously concluded that his request was made midtrial. Relying on *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1976), he argues that, since the sentenc-

with the dissent's conclusion that this statement is a clear, unequivocal finding concerning Jermyn's competency by the trial judge.

The trial judge made this statement in the context of ruling on Jermyn's request to remove his counsel, which was made just prior to the close of Jermyn's case. Although the trial judge made the statement upon which the dissent focuses, the trial judge indicated he was denying the motion because of the conflict which would be created by allowing Jermyn to assume self-representation under the circumstances of this case, where an insanity defense was a crucial part of the defense, and because he did not want to conduct an inquiry into Jermyn's competency to represent himself at such a late point in the presentation of his defense under such circumstances. Thus, with all due respect to our colleague in the dissent, reviewing the trial judge's statement in the context of the trial proceedings as they are reflected in the record, we must conclude that the trial judge, by stating that he was finding Jermyn incompetent to defend himself, actually was denying Jermyn's motion to remove his counsel for a number of intertwined reasons and was not rendering a decision as to Jermyn's mental competency.

ing phase of a capital case is a separate proceeding from the guilt phase, his request was made pre-trial with respect to the sentencing phase, and that he was unconstitutionally denied his right to self-representation in the sentencing phase. Further, relying on *United States v. Taylor*, 933 F.2d 307 (5th Cir.1991), Jermyn asserts that he was entitled to change his mind as to whether he wished to represent himself between the "guilt trial" and the "sentencing trial".

The Superior Court has recently addressed the issue of the timing of a motion for self-representation in *Commonwealth v. Vaglica*, 449 Pa.Super. 188, 673 A.2d 371 (1996). In *Vaglica*, the Superior Court stated:

> While it is well settled that a criminal defendant has the right to proceed *pro se* at trial, *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995); *Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (1994), the right of self-representation is not absolute. This right may be limited or waived, for instance, if it is not raised before trial. *Commonwealth v. Owens*, 496 Pa. 16, 436 A.2d 129 (1981).
>
> In justifying the need to timely raise the right of self-representation, courts have recognized, among other things, the need to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury. *U.S. v. Dunlap*, 577 F.2d 867 (4th Cir.1978). In light of these objectives, when the request for self-representation is asserted after "meaningful trial proceedings have begun", the granting of the right rests within the trial judge's discretion. See, *U.S. v. Lawrence*, 605 F.2d 1321 (4th Cir.1979).

*Vaglica*, 449 Pa.Super. at 191–92, 673 A.2d at 373.[35]

Jermyn would have this court ignore the fact that "meaningful proceedings" had unquestionably begun in his capital trial when he made his request for self-representation, and accord

**35.** In *Vaglica,* the Superior Court concluded that the trial judge did not abuse her discretion in denying the appellant's request for self-representation, which was made after the jury had been selected but not sworn in, and only minutes before trial was scheduled to begin, upon the finding that the motion was ill-timed.

his request pre-trial treatment on his assertion that the guilt phase and the penalty phase of a capital case are actually two separate trials. He points to nothing which supports his assertion that the two phases of his capital case were two separate trials. *Gardner* did not so hold.[36] This court has consistently described the guilt and penalty portions of a capital case as being "phases" of the same trial. *See, e.g., Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991); *Commonwealth v. Young,* 524 Pa. 373, 572 A.2d 1217 (1990).[37] We find no merit to Jermyn's argument that his request for self-representation was made pre-trial. Moreover, to the extent that the trial judge's ruling on Jermyn's request to remove his counsel and proceed *pro se* was based in part on the judge's assessment of Jermyn's competency to act as his own counsel, which is irrelevant to a *Faretta* inquiry, this does not render the PCRA court's ruling erroneous.

▮▮▮▮ Next, Jermyn argues that the PCRA court's reliance on *Sapienza* was inappropriate because the trial court did not deny his request to proceed *pro se* on the basis of an inquiry into the considerations set forth in *Sapienza.* We disagree with Jermyn's argument.

**36.** In *Gardner,* the United States Supreme Court addressed the issue of whether a state's procedure whereby the trial judge relied on information in a presentence investigation report, portions of which were not disclosed to counsel, was violative of the United States Constitution. The *Gardner* Court held that the imposition of the death penalty in that case was invalid.

**37.** We note that in *Taylor,* upon which Jermyn relies to support his argument, the appellant was charged under a federal criminal law with unauthorized departure from a halfway house, 18 U.S.C. § 751(a), and requested self-representation at trial. After the jury rendered its verdict, but prior to his sentencing, the appellant in *Taylor* requested that counsel be appointed to represent him. The federal Court of Appeals for the Fifth Circuit in *Taylor* concluded that the district court erred when it refused to allow the appellant to retract his waiver of his right to counsel under the facts of that case.

The trial and sentencing were two distinct proceedings, divided by time, in the matter in *Taylor,* not connected as in a death case. Further, there was no right to a jury in the sentencing proceeding in *Taylor* as Jermyn had in his death case. Moreover, Jermyn did not waive his right to counsel, but rather proceeded to trial with representation. Thus, we find *Taylor* inapposite to Jermyn's argument for all of these reasons.

The PCRA court in the instant case cited *Sapienza* in support of the proposition we endorsed in *Owens:* that when a defendant requests to proceed *pro se* during the course of the trial, his request is addressed to the sound discretion of the trial court.[38] The PCRA court stressed that Jermyn made his request to proceed *pro se* during the course of the trial, when the guilt phase of the trial was almost concluded, and that this request was ill-timed. The PCRA court also noted that the request was made after the defense had argued that the prosecution had not proven beyond a reasonable doubt that Jermyn had killed his mother and, alternatively, that Jermyn could not be found criminally culpable because of his mental state. The PCRA court reasoned that the trial court did not abuse its discretion in denying Jermyn's request, in view of the potential for disruption from allowing Jermyn to step in as his own counsel well into the trial, and the delay which would have resulted from a *Faretta* colloquy at that point in the trial.

We agree with the PCRA court that there is no arguable merit to the argument that the trial court abused its discretion in denying Jermyn's self-representation request, and Jermyn's counsel were not ineffective for failing to raise this issue. We also agree with the PCRA court that no miscarriage of justice occurred here.

Next, Jermyn argues that the trial court's jury instructions during the penalty phase of his trial prevented the jury from fully considering and giving effect to his mental health mitigating evidence, in violation of the Eighth Amendment of the United States Constitution. Specifically, Jermyn argues that the penalty phase jury instructions in the present case did not allow the jury to give full effect to the mental health mitigation evidence which was presented. Jermyn

---

**38.** In *Sapienza,* the United States Court of Appeals for the Second Circuit addressed the lower court's denial of the appellant's request to proceed *pro se* which was made when the appellant's state criminal trial on charges of forgery and larceny was almost at an end. The *Sapienza* court affirmed the denial of the appellant's petition for a writ of habeas corpus, finding that the appellant's request was ill-timed and followed a "torrent of abortive counsel substitutions", and that the public defender who represented the appellant at trial was competent.

asserts that the court's instruction forced the jury to believe that the mitigation evidence involving Jermyn's mental condition was relevant solely to the mental mitigating circumstances, i.e., that the defendant was under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2), and that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, 42 Pa.C.S. § 9711(e)(3). He contends that the jury instruction caused the jury to believe that the mental health mitigation evidence could not be used in considering the existence of "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense", 42 Pa.C.S. § 9711(e)(8), unless the jury found that evidence rose to the threshold levels of "extreme disturbance", 42 Pa.C.S. § 9711(e)(2), or "substantially impaired capacity", 42 Pa.C.S. § 9711(e)(3). Jermyn argues that at his prior trial, appellate, and first PCRA counsel were ineffective in failing to raise this issue.

The jury instructions in the penalty phase of Jermyn's trial were as follows:

Now, the mitigating circumstances that you may consider in this case:

1. The defendant has no significant history of prior criminal convictions. It has been stipulated as such.

2. The defendant was under the influence of extreme mental or emotional disturbance.

3. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

Now, with both [of] those, call them mental mitigating circumstances, and I am going to read them again, the law does not use these terms in the same manner or the same way in which I used the terms, either legal insanity or guilty but mentally ill, in my prior charge. The law uses these terms as ... you as jurors use your commonsense from

reviewing all the circumstances. So I will repeat them again:

The defendant was under the influence of extreme mental or emotional disturbance.

Next, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

I repeated them again because there's been substantial evidence in this case involving the defendant's mental condition. You are going to have these words in front of you when you review all of the evidence in this case and you should consider in light of all of the evidence in this case whether or not either one of those mitigating circumstances is present.

Next, 4. The age of the defendant at the time of the crime. You will recall he was born on August 3, 1948.

5. The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution/ or acted under the substantial domination of another person.

6. The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts.

7. The defendant's participation in the homicidal act was relatively minor.

8. Any other evidence of mitigation concerning the character and record of the defendant and the circumstance of his offense.

Those are the ... mitigating circumstances. You will make a factual determination of what, if any, ... mitigating circumstances apply based upon all of the evidence in this case.

(N.T. Penalty Phase, 8/17/85, pp. 56–58)

Regarding the jury's verdict form, the trial court instructed the jury as follows:

Then on the second page there is a list of all of the mitigating circumstances exactly in the language as I just read them to you. You will consider each and every one. Since there has already been a stipulation that the defen-

dant has no significant history of prior criminal convictions, obviously, that will be checked.

Also, you must determine if any others are applicable as I read them to you, remembering that you are fact-finders and if you find that they have been proven by a preponderance of the evidence by the defendant, it is reasonable doubt on the behalf of the Commonwealth as to aggravating, but by a preponderance of the evidence by the defendant, then you would check each one you find has factually been proven to you by that standard of proof.

(N.T. Penalty Phase, 8/17/85, pp. 60–61).

On the basis of *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992), the PCRA court concluded that there was no arguable merit in Jermyn's argument that the jury was precluded from fully considering and giving effect to his mental health mitigating evidence, and that no miscarriage of justice occurred.

In *Williams*, which was a direct appeal in a capital case, this court addressed the question of whether the appellant's trial counsel was ineffective in failing to object to what the appellant asserted was the trial court's unconstitutional limiting of the range of mitigating circumstances which the jury could consider. This court in *Williams* found that trial counsel was not ineffective. We reasoned that the trial court's instructions in that case did not unconstitutionally limit the range of mitigating circumstances which the jury could consider. Further, we pointed out in *Williams* that we will not presume that a reasonable juror will ignore the open-ended language of the catchall mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(8) on the belief that "any other evidence" means categories of evidence other than mental mitigation evidence.

We agree with the PCRA court that *Williams* controls Jermyn's argument in this case. We cannot conclude that the trial court here unconstitutionally limited the range of the mitigating circumstances that the jury could consider. The trial court's instructions recited verbatim all of the statutory mitigating circumstances set forth at 42 Pa.C.S. § 9711(e),

reiterating the mental health mitigating circumstances set forth at 42 Pa.C.S. § 9711(e)(2) and (3), and including the catchall provision set forth at 42 Pa.C.S. § 9711(e)(8). The trial court's instructions made it clear to the jurors that, to the extent that evidence relevant to Jermyn's mental health did not qualify for the mitigating circumstances set forth at 42 Pa.C.S. § 9711(e)(2) and (3), it could always be considered under 42 Pa.C.S. § 9711(e)(8). Accordingly, we agree with the PCRA court that Jermyn's argument has no arguable merit, and thus, there was no ineffectiveness of counsel. There was no miscarriage of justice.

Jermyn next argues that the trial court's penalty phase jury instructions and the prosecutor's argument at the penalty phase improperly told the jury that the sole aggravating circumstance should be weighed against each mitigating circumstance individually, as opposed to weighing the sole aggravating circumstance against the mitigating circumstances collectively. Relying on *Commonwealth v. DeHart*, 539 Pa. 5, 650 A.2d 38 (1994), he asserts that his previous counsel were ineffective in failing to raise this issue.

In *DeHart*, this court addressed the appellant's challenge to the PCRA court's denial of his petition for PCRA relief from his death penalty judgment of sentence. The appellant in *DeHart*, in his PCRA petition, alleged that his trial counsel was ineffective in failing to object to the verdict slip which went out with the jury because the singular sense of the word "circumstance" in that verdict slip could have led the jury to weigh the sole aggravating circumstance in that case against each mitigating circumstance individually, rather than collectively. The verdict slip in *DeHart* stated, "we the jury have found unanimously one aggravating circumstance which outweighs any mitigating circumstance." *DeHart*, 539 Pa. at 25, 650 A.2d at 48. The record in *DeHart* did not reveal the mitigating circumstances, if any, which the *DeHart* jury found. Four members of this court believed that the appellant's trial counsel was ineffective because he failed to object to the verdict slip which was submitted to the jury, as that verdict slip could have had an effect on their deliberations, and that

the trial court's oral instructions did not remedy any defect in the verdict slip.

In the present case, the trial court instructed the jury as follows:

Your attention must now be directed to the question of aggravating and mitigating circumstances, knowing that how you determine these circumstances determines whether the defendant will be sentenced to death or life imprisonment. The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance as provided by the Commonwealth and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweighs any mitigating circumstances.

In all other cases the verdict must be a sentence of life imprisonment.

Now I'm going to charge you on Pennsylvania's death penalty statute, and although it is stipulated that only one possible aggravating circumstance may be found by you I will charge you on the entire statute so that you can understand the scheme and purpose of the statute and therefore help you apply the law even though other aggravating circumstances will not be applicable in this case.

I'll charge you on all mitigating circumstances as outlined by the Pennsylvania statute and you may consider whether or not any or all or a part of those mitigating circumstances have been proven by the defendant.

Remember again, it is not a correlation between aggravating, mitigating circumstances alone that decides this case. If you find one aggravating circumstance, and there can only be one in this case, and we already have a stipulation that there is one mitigating circumstance, and you may find more, it is not a question of whether or not there are more mitigating circumstances than aggravating circumstances, it is a question of whether the aggravating circumstance outweighs one or more of the mitigating circumstances you may find, assuming that you would find that, you must make

the determination of whether or not there is an aggravating circumstance.

. . .

Remember again your verdict must be unanimous, it cannot be reached by a majority vote or by a percentage vote, it must be a verdict of each and every one of you.

Remember if you find at least one aggravating circumstance and no mitigating circumstance or if you find one or more aggravating circumstances, you can only find one in this case, which outweigh any or all mitigating circumstances, the defendant will be sentenced to death.

(N.T. Penalty Phase, 8/17/85, pp. 53–54, 59).

Moreover, the verdict slip which went out with the jury in the instant case provided:

We, the jury empaneled in the above entitled case, having heretofore determined that the defendant, Frederic Jermyn, is guilty of murder of the first degree, do hereby find:

AGGRAVATING CIRCUMSTANCE(S)

. . .

The defendant committed a killing while in the perpetration of a felony [a check is made next to this sentence]

. . .

MITIGATING CIRCUMSTANCE(S)

The defendant has no significant history of prior criminal convictions [a check is indicated next to this sentence]
The defendant was under the influence of extreme mental or emotional disturbance [a check is indicated next to this sentence]

. . .

Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense [a check is indicated next to this sentence]

The aggravating circumstance(s) outweigh the mitigating circumstance(s). [A check is indicated next to this sentence].

(Reproduced Record, p. 1116a).

We agree with the PCRA court that there is no arguable merit to Jermyn's contention that the trial court's instructions in his case rendered the jury's deliberation on his sentence improper for the reasons found present in *DeHart*. The situation in *DeHart* was clearly different, since in that case the verdict slip was not clear as to how the jury was to consider the sole aggravating circumstance against the mitigating circumstances, and it was not clear from the record as to the mitigating circumstances the jury found in that case. In the case *sub judice*, we agree with the PCRA court that there was no *DeHart* problem to which trial counsel should have objected.[39] Consequently, we agree with the PCRA court that Jermyn's ineffectiveness argument lacks arguable merit, and that no miscarriage of justice occurred in this case.

Jermyn next contends that his death sentence violates the guarantees of the Eighth and Fourteenth Amendments to the United States Constitution and the "corresponding provisions" of the Pennsylvania Constitution, because the sole aggravating circumstance in this case was built into the guilty verdict on the arson felony which resulted in his mother's death. Jermyn claims that the sole aggravating circumstance here duplicated the offense of first degree murder, and he asserts that his trial counsel and all of his prior subsequent counsel were ineffective in their failure to raise this issue.

As the Commonwealth points out in its brief, Jermyn's trial counsel did object to the use of this aggravating circumstance at the penalty phase of Jermyn's trial on the basis that the

39. We agree with the PCRA court that there is no arguable merit to Jermyn's contention that the prosecutor's penalty phase closing argument misled the jury because of his varying use of the words circumstance and circumstances, as in *DeHart*, as to the weighing process for aggravating and mitigating circumstances, and, thus, no miscarriage of justice occurred here. The jury is presumed to follow the court's instructions. *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991).

134

felony arson was built in to the first degree murder offense. The trial court rejected his argument. (*See* N.T. Penalty Phase, 8/17/85, pp. 3–4). Jermyn's direct appeal counsel raised this issue; this court rejected Jermyn's argument. We stated:

> The above analysis makes clear that arson endangering persons and first degree murder remain separate offenses regardless of the fact that a deliberate setting of a fire was the instrumentality by which the killing was accomplished. . . . The fact that the jury also found that appellant had indeed violated section 3301(a)(1)[40] is properly considered as an aggravating circumstance because by employing this means he had recklessly exposed persons other than the intended victim to injury or death.

*Commonwealth v. Jermyn*, 516 Pa. at 485–86, 533 A.2d at 86 (footnote added).

This court, in reviewing Jermyn's appeal from the lower court's denial of his first PCRA petition, also rejected the argument that Jermyn's trial counsel was ineffective in failing to petition the United States Supreme Court for certiorari when this court denied his claim on direct appeal. *See. Commonwealth v. Jermyn*, 533 Pa. 194, 201, 620 A.2d 1128, 1132 (1993).

The issue of whether the sole aggravating circumstance in this case duplicated the offense of first degree murder therefore clearly has been previously litigated on direct appeal. It is not an appropriate basis for PCRA relief. 42 Pa.C.S § 9543(a)(3).

■ Jermyn next argues that the trial court's jury instruction at the penalty phase of his trial and the penalty phase

**40.** Section 3301(a)(1) of the Crimes Code provides:

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire. . . .

18 Pa.C.S. § 3301(a)(1).

verdict sheet's requirement, that a mitigating circumstance had to be found unanimously before it could be given effect in the jury's sentencing determination, improperly restricted the jury's consideration of mitigating evidence and thereby violated Jermyn's rights under the Eighth and Fourteenth Amendments to the United States Constitution and the "corresponding provisions" of the Pennsylvania Constitution. Jermyn asserts that each of his previous counsel was ineffective in failing to raise this argument. In support of his argument, Jermyn relies, *inter alia,* on *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

Previously, in *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994), this court addressed an appeal of the lower court's denial of the appellant's petition for PCRA relief from his judgment of sentence of death. At issue in *Peterkin* was an instruction given to the jury on the need to be unanimous in finding mitigating circumstances. Chief Justice Flaherty, then Justice Flaherty, wrote in *Peterkin:*

> *Mills* concerned a Maryland statute which required jurors unanimously to agree on each individual mitigating circumstance after deciding aggravating factors. Absent unanimous agreement, the Maryland statute barred consideration of the mitigating evidence as to a given circumstance. The Supreme Court held that the statute violated the Eighth Amendment because a single Maryland juror could force a death verdict on the other jurors by refusing to agree that mitigation existed.
>
> We have held that the Pennsylvania statute, 42 Pa.C.S. § 9711, does not violate the rule in *Mills. See Commonwealth v. Hackett,* 534 Pa. 210, 627 A.2d 719 (1993); *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991); *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (1989); *Commonwealth v. Frey,* 520 Pa. 338, 554 A.2d 27 (1989). Appellant's ineffectiveness claim fails.

*Peterkin,* 538 Pa. at 465, 649 A.2d at 126 (footnote omitted).

We also noted in *Peterkin* that, even if we were to assume that *Mills* applied, it could not be applied retroactively to the

appellant in *Peterkin* because *Mills* was announced in 1988, which was six years after the trial in *Peterkin* and two years after this court's decision on the appellant's direct appeal in *Peterkin.* Quoting *Commonwealth v. Gillespie,* 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986), we stated:

> this court held that a new rule of law will not be applied retroactively "to any case on collateral review unless that decision was handed down during the pendency of appellant's direct appeal and the issue was properly preserved there or ... was nonwaivable."

*Peterkin,* 538 Pa. at 465 n. 4, 649 A.2d at 126 n. 4.

Jermyn, relying on *Gillespie* without acknowledging this court's decision in *Peterkin,* asserts that a retroactive application of *Mills* to his case would not be inappropriate, because it did not decide new law.

Jermyn was tried in 1985, and his direct appeal was decided by this court in 1987, prior to the decision in *Mills.* In Jermyn's direct appeal, this court found that the trial court instructed the jury precisely tracking the language of section 9711(c)(1)(iv) of the Sentencing Code, 42 Pa.C.S. § 9711(c)(1)(iv) as follows:

> The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance as provided by the Commonwealth and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweighs any mitigating circumstances.
>
> *In all other cases the verdict must be a sentence of life imprisonment.*
>
> *R.R. 1107 (emphasis added).*

Taken in their proper context, the trial court's explanation of unanimity clearly related to the requirement of unanimity with respect to a sentencing verdict of death.

*Commonwealth v. Jermyn,* 516 Pa. at 489, 533 A.2d at 88.

In his brief, Jermyn points to excerpts from the trial court's instructions which he contends support his argument that the

use of the words "you" and "your" implied that the jury's decision on the existence of mitigating circumstances must be unanimous before the mitigating circumstance could have any effect on the sentence rendered by the jury.

Our review of the jury instructions in their entirety shows that there is no arguable merit to Jermyn's contention. (N.T. Penalty Phase, 8/17/85, pp. 52–61) Nor is there arguable merit to Jermyn's contention regarding the jury verdict slip suggesting that the jury's decision regarding the mitigating circumstances had to be unanimous. The verdict slip in the present case does not contain language stating that the jury "unanimously" made any finding, and, even if it had, such language has been held to be appropriate in view of proper jury instructions. *See Frey, supra.* We find that the jury instructions and the verdict slip closely followed the language in the sentencing statute which states that a unanimous verdict is necessary as to the ultimate decision to impose a sentence of death. 42 Pa.C.S. § 9711(c)(1)(iv), but did not imply a requirement that any given mitigating circumstance must be unanimously recognized before it could be weighed against aggravating circumstances in reaching a verdict.

Accordingly, we agree with the PCRA court that Jermyn's counsel were not ineffective in failing to raise this issue, as it has no arguable merit, and, moreover, because *Mills* was decided subsequent to Jermyn's trial and direct appeal. *See Peterkin.* No miscarriage of justice occurred in this case.

 Jermyn's last argument is that the introduction of testimony in the Commonwealth's case-in-chief concerning Jermyn's silence during police interrogation violated Jermyn's rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and violated the United States Supreme Court's holding in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, Jermyn contends that the references during the Commonwealth's case-in-chief to Jermyn's silence in response to police accusations that Jermyn had murdered his mother, made during the course of a transcribed custodial interroga-

tion on January 4, 1985, amounted to an unconstitutional abridgement of Jermyn's Fifth Amendment guarantee against self-incrimination and his Fourteenth Amendment right to due process. Jermyn asserts that the record does not reflect whether or not he had been apprised of his *Miranda* rights at the time of his custodial interrogation. He further alleges that his prior counsel were ineffective in failing to raise this issue.

On Jermyn's direct appeal, this court examined Jermyn's challenge that his trial counsel was ineffective in failing to brief and pursue a post-verdict motion challenging the admissibility of statements he made to police during interviews on January 3, 1985 and January 4, 1985, on the ground that he was subjected to custodial interrogation without being given *Miranda* warnings. This court held that on January 3, 1985 and January 4, 1985, Jermyn was not in a custodial situation, and that his claim was without arguable merit and trial counsel was not ineffective in failing to pursue it. *See Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987).

Thus, the issue of whether Jermyn was in a custodial situation when he was questioned by police clearly has been previously litigated on direct appeal. It is not an appropriate basis for PCRA relief. 42 Pa.C.S § 9543(a)(3). We thus agree with the PCRA court's rejection of this claim as previously litigated.

For the foregoing reasons, the orders of the Court of Common Pleas of Cumberland County are affirmed.[41]

FLAHERTY, C.J., files a dissenting opinion.

FLAHERTY, Chief Justice, dissenting.

Jermyn's trial judge stated on the record that "on the facts as I know them and on the evidence in the record, he cannot competently defend himself. I make that finding of fact. The motion is denied...." N.T. August 15, 1985, at 414. The

---

**41.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case back to the Governor. 42 Pa.C.S. § 9711(i).

ruling is simply too unequivocal to overlook. Thus I cannot join the majority opinion which states that the quotation is taken out of context; it is not an accurate reading of the record; it really means that, given the nature of the defense of insanity, Jermyn was not sophisticated enough to represent himself sufficiently; it is not really a ruling on Jermyn's competence to be tried. With due respect to the majority's interpretation, I read the trial judge's statement as a clear, unequivocal finding that Jermyn was not competent to represent himself.

Jermyn argues correctly that if he was incompetent to represent himself, then he was not competent to stand trial. The standards of competency for self-representation and for standing trial are identical. *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995).

I believe that trial counsel's failure to request a mistrial on grounds of Jermyn's incompetence to stand trial constitutes ineffective assistance. Although it was not certain that the trial court would have accepted the equivalence of competency for self-representation and for standing trial because *Godinez* and *Starr* had not then been decided, a motion for mistrial stood a reasonable probability of success. Certainly, if the issue of the equivalence of competency for self-representation and competency to stand trial had been raised prior to the decisions in *Godinez* and *Starr,* a trial court or an appellate court would very likely have found the standards to be identical. It is clear that the holdings in *Godinez* and *Starr* were not surprising or unanticipated changes in the law. In any event, a motion for mistrial would not have been a futile act; counsel's failure to seek a mistrial appears to be an unjustifiable, erroneous oversight in trial tactics. There is no possible justification for the omission which would have been in Jermyn's best interests. Thus the resulting prejudice is glaringly obvious. Jermyn was entitled to a termination of the trial due to his incompetence to stand trial, but instead, the trial proceeded to a sentence of death. I regard this as a miscarriage of justice sufficient to warrant PCRA relief under

*Commonwealth v. Szuchon,* 534 Pa. 483, 633 A.2d 1098 (1993)(proceedings resulting in conviction were so unfair that miscarriage of justice occurred which no civilized society can tolerate).

The voluminous record in this case is replete with evidence of Jermyn's serious mental illness over a period of decades. Such evidence explains and supports the trial court's finding that "on the evidence in the record, [Jermyn] cannot competently defend himself."

I would therefore grant a new trial if indeed Jermyn can be found competent to stand trial.