635 A.2d 603

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Thavirak SAM a/k/a Thaviak Sam, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 27, 1993.

Decided Dec. 8, 1993.

352

■■■■■■■■

Samuel C. Stretton, West Chester, for appellants.

Ronald Eisenberg, Philadelphia, Norman Gross, Robert A. Graci, Atty. Gen. Office, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION*

MONTEMURO, Justice.

This direct appeal arises from the June, 1991 jury trial of Appellant Sam for the shooting deaths of three relatives. Sam was found guilty of three counts of first degree murder and possession of an instrument of crime. He then requested a waiver of his right to have the jury decide the penalty, and instructed his attorney not to argue any mitigating circumstances. After an extensive colloquy in which Sam acknowledged that he was in effect asking the court to sentence him to death, the trial judge entered three consecutive death sentences. He specifically found at least one aggravating circumstance and no mitigating circumstance for each murder. Thereafter, the court heard and denied post-verdict motions and suspended sentence on the charge of possession of an instrument of crime. At that proceeding, Sam indicated for the first time that he did not want to die. The court then appointed new counsel, who filed this timely appeal.

■■■■ Initially, although appellant does not challenge the sufficiency of the evidence, we must review the record to determine if the evidence is legally sufficient to sustain each of his convictions for murder of the first degree. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Clearly, it is. Uncontradicted evidence presented at trial established that at approximately 1:00 p.m. on July 20, 1989, appellant's sister-in-law, Hong Ing, called the family restaurant to report that Sam was beating his son. Sam had

habitually beaten the child since he was one month old and occasionally beat his two-year old niece as well. Sam's mother-in-law, Thay Ing, had instructed Hong to call her if Sam beat his son.

When Thay Ing learned that Sam was beating the child again, she left the restaurant and returned to the family home at 723 Snyder Avenue in Philadelphia. Sou Ing, her son and brother-in-law of Sam, accompanied her. When they entered the house, they did not see Sam, as he had already gone upstairs. Sou told Hong that he would take both children back to the restaurant. Sou then went upstairs to rest for a brief time. Thay Ing remained downstairs with the children.

At some point shortly thereafter, Sam retrieved a loaded .380 caliber semi-automatic pistol from his bedroom. The gun, which he had purchased the day before along with 100 rounds of ammunition, held a thirteen bullet clip. At approximately 1:50 p.m. Sam shot Thay twice and attacked his brother-in-law Sou, firing at him inside the house and chasing him out onto the street. As Sou ran down Snyder Avenue, one of the bullets hit him in the back and severed his spinal column. He fell to the ground. Sam then ran up, loaded a fresh clip, and fired continuously at the fallen body. Five bullets entered the back of the victim's head as horrified bystanders watched.

As the shooting stopped, Sam's wife ran into the street and dropped to her knees by her brother. Sam ignored her, turned and walked back to the house. Almost immediately upon re-entering, he shot his two-year-old niece once between the eyes at close range. He then shot his mother-in-law again while she lay on the floor.

Several bystanders then saw Sam come out, get into his car, and drive off. Two people wrote down his license plate number and later gave it to police. Almost simultaneously, police arrived at the scene. Upon entering the house, they discovered the two bodies and found Sam's wife crying hysterically on the second floor. When asked what had occurred, she said that her husband shot the three relatives because she had threatened to divorce him for beating their child.

As a result of further investigation, the police learned that Sam may have fled to a friend's house in North Lebanon Township. They notified the North Lebanon police and advised that they were obtaining a warrant for his arrest. The North Lebanon police then went to the friend's residence, and saw Sam in his car in the driveway. While awaiting confirmation that a warrant had been issued, the police received a frantic call from the residence. The caller reported that a man had a gun and was threatening to kill himself. At that point, the police moved in and made the arrest. They also retrieved the murder weapon.

## I.

Appellant's first argument is that defense counsel was ineffective for failing to object to the trial court's ruling that he was competent to stand trial. He contends that there was conflicting evidence presented about his ability to comprehend, and that his conduct during trial confirmed that he did not understand the proceedings. Further, he claims that counsel was ineffective for failing to request additional psychiatric testing.

Our standard for reviewing ineffectiveness claims is well established. In *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), this court held that:

ineffectiveness claims are measured by two components. First, counsel's performance is evaluated in light of its reasonableness if it is determined that the underlying claim is of arguable merit ...

Second, we have required that the defendant demonstrate how the ineffectiveness prejudiced him.

515 Pa. at 158–59, 527 A.2d at 975 (citations omitted).

At the end of the first day of *voir dire*, counsel explained to the court that his client "... doesn't care, he is not paying attention, he is not looking at anyone, he is not interested." He also said that Sam complained about "feeling dizzy" because he had not received one of his medications that morning. The court then asked a court psychologist, Dr. Alan Levitt, to

interview Sam to determine if he was competent to proceed. Later that day, with the assistance of a Cambodian interpreter, Dr. Levitt examined Sam and concluded that "[h]e seems withdrawn, he seems somewhat out of contact with reality at present. He is not able to focus adequately. And in my opinion he is in a disturbed state, too disturbed to defend himself adequately in a trial situation at this point." Dr. Levitt opined that Sam could not understand what was happening at trial.

At that point, the court entered an order for a full psychiatric examination, which was conducted by Dr. Robert Stanton, again with the aid of an interpreter. Dr. Stanton disagreed with Dr. Levitt's findings, and concluded that Sam was competent to stand trial. He found that Sam was able to understand the nature of the charges against him and why the proceedings were being held. He opined that Sam "managed to grasp the meaning of all the different, important aspects, such as charges, function, purpose of a trial ... [Sam] was aware that if he was acquitted he would go free, that was the outcome that he wanted and he was going to work towards that." After hearing both experts, the trial court concluded that appellant was competent and jury selection resumed. At no point thereafter did counsel ever inform the court of any continuing problems.

A person is incompetent to stand trial where he is "substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense." 50 Pa.S. § 7402(a) *See also Commonwealth v. Banks,* 513 Pa. 318, 340–41, 521 A.2d 1, 12, *cert. denied sub. nom., Banks v. Pennsylvania,* 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987). The person asserting incompetency has the burden of proving it by clear and convincing evidence. 50 Pa.S. § 7403(a). Moreover, the determination of competency rests in the sound discretion of the trial court. *Commonwealth v. Banks,* 513 Pa. at 341, 521 A.2d at 12.

Sam is arguing that this court should believe the testimony of Dr. Levitt, and discount the conflicting expert testimony.

He would have us substitute our judgment for that of the trial judge, who had the opportunity to observe Sam's demeanor throughout the proceedings. We decline to do so.

After the competency ruling, counsel never again complained that Sam was unable to understand the proceedings or assist with his defense. The court conducted several extensive colloquies with appellant during the course of trial. On each occasion, he demonstrated that he understood what was occurring, and gave no indication that he was confused or unable to participate in his defense. Appellant has not established, by clear and convincing evidence, that he was incompetent to stand trial. *Commonwealth v. Banks,* 513 Pa. at 342–44, 521 A.2d at 12–13 (defendant failed to meet his burden of demonstrating, by clear and convincing evidence, that he was incompetent to stand trial; expert testimony conflicted as to whether defendant would be capable of understanding nature and object of proceedings and trial judge observed that defendant's behavior, demeanor, and presentations throughout proceedings corroborated rather than contradicted finding of competency). Therefore, despite appellant's insistence that counsel failed to represent his interests when the competency issue was not pursued, counsel cannot be ineffective for failing to lodge a meritless claim.

## II.

Appellant's next claim of error concerns the Commonwealth's introduction of evidence that Sam beat his son and niece. While Sam concedes that the Commonwealth was entitled to present evidence that he beat his two-year-old son on the day of the murders, he argues that the trial court improperly admitted evidence that he had beaten his son on other occasions, and that he had also beaten his two-year-old niece on prior occasions. He further argues that trial counsel was ineffective for failing to object to the admission of this evidence and for failing to ask for a limiting instruction.

The admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court

may only reverse rulings on admissibility upon a showing that the lower court abused its discretion. *Commonwealth v. Banks,* 513 Pa. at 350, 521 A.2d at 17. Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible. *Commonwealth v. Story,* 476 Pa. 391, 399–400, 383 A.2d 155, 159 (1978). However, there are recognized exceptions to this general rule, justifying admission so long as the need for the evidence outweighs the potential prejudice. *Id.* at 402, 383 A.2d at 160. These exceptions include evidence which tends to establish motive; intent; absence of mistake or accident; a common scheme, plan or design; or the identity of the person charged with the commission of the crime. *Id.* at 400, 383 A.2d at 159; *Commonwealth v. Claypool,* 508 Pa. 198, 204, 495 A.2d 176, 179 (1985). Also included are situations where the distinct crime or bad act was part of a chain or sequence of events which formed the history of the case and was part of its natural development. *Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 497 (1988).

The Commonwealth introduced the challenged evidence on two asserted grounds, namely that such evidence was relevant and necessary to show motive and to provide a historical perspective of the on-going dispute which led to the violent murders. We agree with the Commonwealth that, under the circumstances, the evidence of the prior beatings was relevant and of important evidentiary value.

The record reveals that the murdered child's mother and aunt both testified that Sam had beaten his son and niece in the months prior to the murders. In response to the beatings of the son, the grandmother offered Sam ten thousand dollars if he would allow her to adopt the child. When that offer failed, she threatened to call the police if the beatings continued. The family also began looking for another residence, intending to leave Sam alone in the house on Snyder Avenue, which he owned. Sam's wife told him that she wanted a divorce because Sam beat their son and did not love him. She told him she intended to leave when her family found other living quarters. Sam's response to the family's attempt to stop the beatings was a threat to kill the entire family. The

beating of the children over a period of time was the cause of the on-going dispute and Sam's threat to harm the family. The evidence of the beatings was necessarily admitted to explain why he bore such ill will towards the family, and why he reacted with such violence when the adult murder victims returned home on the day of the murders to stop yet another beating. Counsel cannot be ineffective for failing to object to properly admitted evidence.

Even if we assume, *arguendo*, that this evidence was improperly admitted, no prejudice accrued to appellant from counsel's failure to object or request a limiting instruction. There was such overwhelming, properly admitted, uncontradicted evidence of guilt that the evidence of prior beatings could not have so influenced the jury as to make the verdict unreliable. In addition to the aforementioned evidence, the Commonwealth's case included the testimony of a neighbor who was at home on the day of the murders. She testified that, at the time of the murders, she heard gunshots, looked out her window, and saw Sam chasing another Asian man, while holding a gun. She heard additional shots. Then she saw Sam walking back up the street to his home.

Other witnesses, who actually saw Sou Ing die, described the murderer in a manner that implicated Sam. Their physical description of the murderer and testimony about his movements on the street were consistent with the neighbor's testimony and identification of Sam. The same witnesses further testified that they heard several shots fired inside Sam's house shortly after they saw him reenter it. One witness also identified Sam's car as the one in which he saw the killer flee.

In addition, the ballistics expert involved in the investigation testified extensively. His testimony established that a bullet recovered from Sou Ing's head had been fired from Sam's gun. He also stated that the nineteen spent cartridge casings recovered from inside the house, from the victims, and from the street, were from Sam's gun or from one of the same make and caliber.

Two other witnesses, residents of the North Lebanon Township home, testified that Sam told them he had just killed three people.

Sam argues that our decision in *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989) compels a finding that counsel's failure to request a limiting instruction prejudiced him. In *Billa*, the appellant was convicted of murdering a woman who had spurned his romantic overtures. At trial, the Commonwealth elicited testimony about how appellant had raped his victim just prior to murdering her. The Commonwealth introduced extensive evidence that appellant had previously raped another woman and tried to strangle her after she too had spurned him. On appeal, this court held that the prior crimes evidence was properly admitted to demonstrate *modus operandi*, and to counter appellant's claim of accident. A new trial was required, however, because trial counsel had failed to request an instruction regarding the limited purpose for which the evidence of appellant's previous, similar crime of violence could be admitted.

In *Billa*, the evidence of prior criminal activity was so similar to that for which appellant was being tried that we could not conclude "with any reasonable certainty that the jury would have returned the same verdict of murder of the first degree had it been properly instructed." *Commonwealth v. Billa*, 521 Pa. at 182–83, 555 A.2d at 842–43. However, in the instant case, on the facts presented here, we are certain that the jury would have returned the same verdict of murder of the first degree had it been properly instructed. The prior beatings did not so resemble the murders as to suggest a propensity to shoot to death three relatives. The failure to request the limiting instruction did not alter the outcome.

### III.

Appellant's next ineffectiveness claim is premised on counsel's failure to object to various comments made by the Commonwealth during opening and closing argument. He contends that the prosecutor referred to facts not in evidence, and so inflamed the jury with his comments that it could not

reach an impartial verdict. We do not agree. When examined in context, the prosecutor's comments were neither unfair nor unduly prejudicial.

At the guilt phase, we have long held that comments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531, 536 (1986) (quoting *Commonwealth v. Anderson*, 501 Pa. 275, 282, 461 A.2d 208, 211 (1983)). The prosecutor is free to argue that the evidence leads to guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence. *Commonwealth v. Chester*, 526 Pa. 578, 599–600, 587 A.2d 1367, 1377 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991). The Commonwealth may press its case with "logical force and vigor." *Commonwealth v. Cronin*, 464 Pa. 138, 142–43, 346 A.2d 59, 62 (1975). Further, the effect of the prosecutor's remarks must be evaluated in context. *Commonwealth v. Carpenter*, 511 Pa. at 439, 515 A.2d at 536.

Sam argues that the prosecutor improperly referred to the evidence of prior beatings in his opening statement. He contends that, since the evidence should not have been admitted at trial, it was error to refer to it in the opening. We have already addressed the propriety of the introduction of this evidence, and found Sam's argument meritless. No foundation remains for the instant claim.

Next, Sam contends that the prosecutor improperly stated during his opening that Sam had threatened to kill his entire family, but failed to produce evidence of that threat. In fact, the Commonwealth did produce evidence at trial, through the testimony of Hong Ing, that Sam made this precise threat. On direct examination, the prosecutor pursued the subject of the threats:

Q. All right. Now, before that day, before the day that you, that something happened to your mother and your brother and your niece, before that day, had Thavirak ever said what he would do to everybody in the house?

A. Yes, he didn't threaten anything but I just heard him talking.

Q. And what did you hear him say when he was talking?

A. He said he's going to kill the whole family.

Since the allegation of prosecutorial misconduct is contradicted by the record, this claim is meritless.

Sam's third assertion is that, in his opening statement, the prosecutor referred to something else not of record: that Sam consumed sleeping pills immediately before his capture. Two witnesses gave testimony relevant to this issue. On direct examination, one member of the An family testified that he took Sam's gun "after it looked like he is sleepy, maybe he took some spills [sic] or something, he was asleep, I took the gun from him ...". Further, Sergeant Ronald Kline of the North Lebanon Police Department testified, without objection, that members of the An family told him that Sam "had possibly ingested some medication in an attempt to kill himself." When police arrested Sam, he was sitting in the driver's seat of his car, in a semi-conscious state, and responded incoherently to police questions. The prosecutor's comments about the medicine were reasonably derived from the evidence and were not in error. *Commonwealth v. Hardcastle,* 519 Pa. 236, 254, 546 A.2d 1101, 1109–10 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990) (prosecutor's remarks fall within the ambit of fair comment if they are supported by evidence and they contain inferences which are reasonably derived from that evidence).

Next, appellant argues that the prosecutor acted improperly when he stated in his opening that he intended to call Sam's wife as a witness, but then failed to do so. This was not improper. *Cf. Commonwealth v. Colson,* 507 Pa. 440, 465–66, 490 A.2d 811, 824 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986) (where there was extensive evi-

dence presented against defendant, prosecutor's statement in his opening that he would show the defendant attempted to flee when arrested was not rendered improper by the fact that prosecutor chose not to present that evidence). The prosecutor did intend, at the time of his opening statement, to call Sam's wife. He changed his mind when, after trial began, she was interviewed again by homicide detectives and recanted her previous, inculpatory testimony and statement.

Sam also criticizes the prosecutor for stating that he was uncertain what Sam's wife would say on the witness stand. Sam claims that the remark "had to taint [him] with the implication that she was doing something to protect him." We fail to see how such a remark could possibly prejudice appellant, especially since defense counsel had already called her "a liar" in his opening statement.

Sam's claims of reversible error made in reference to the prosecutor's summation are likewise without merit. The first alleged error was the prosecutor's statement that he declined to call Sam's wife because of his fear that she would commit perjury. This comment was proper since it was grounded in fact. Moreover, we note that it was mere repetition of information that defense counsel had already disclosed to the jury during his opening statement. *Commonwealth v. Frey,* 520 Pa. 338, 351–52, 554 A.2d 27, 33 (1989), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990).

Next, Sam claims that the prosecutor improperly inflamed the passions of the jury when he stated that Sam's murder of his brother-in-law was "one of the most chilling and coldest things [the jurors would likely ever hear]". This remark was made during the prosecutor's summary of the evidence of that killing, and as such, was nothing more than the oratorical flair permitted during argument. *Commonwealth v. Chester,* 526 Pa. at 598–600, 587 A.2d at 1377 (prosecutor permissibly argued that appellants had "coldness of heart" and "ice water in their veins" when they murdered the victim).

Nor did the prosecutor act improperly when he argued that:

The evidence in this case establishes that the Defendant put a gun less than four inches from the little girl's head and blew her brains out. He intended to kill her and he had malice. And for that Defendant wants justice. Give it to him. You are guilty of first degree murder for that: According to the evidence, you blew that little girl's brains out.

The facts fully supported this argument. *Commonwealth v. Colson*, 507 Pa. at 466, 490 A.2d at 824 (during summation, prosecutor permissibly described effect of gunshots on the victim); *Commonwealth v. Chester*, 526 Pa. at 598–600, 587 A.2d at 1377 (prosecutor permissibly argued that appellants carved up the victim like a cheap piece of tenderloin). Nor was it error for the prosecutor to point out that the two-year-old was an innocent victim, or that Sam had "wiped out" three generations of people. Neither comment was so prejudicial as to prevent the jury from dispassionately reaching a verdict.

Sam's last allegation misstates the record and is completely meritless. He contends that the prosecutor improperly told the jury his personal opinion that Sam was a first degree murderer. What the prosecutor did argue was that the jury, by their verdict, should "tell [Sam] *from the evidence* he is a murderer and he is a first degree murderer." (emphasis added).

Defense counsel was not ineffective for failing to object or ask for curative instructions in regard to any of the above-mentioned allegations of error. There is no merit to any of the underlying claims.

## IV.

The fourth claim concerns the trial court's refusal to allow defense counsel to make a statement about a missing witness, and subsequent refusal to give a missing witness charge. During summation, defense counsel argued that the jury could acquit Sam because the Commonwealth failed to call Sam's wife as a witness. The prosecutor made a timely objection, which was sustained, and the court directed the jury to disregard counsel's statement. Later, in his charge to the

jury, the judge stated the law regarding a missing witness as follows:

> In this case reference was made to the fact that the Defendant's wife, Lang Sam, did not testify. I caution you now that no inference should be drawn from this fact against the Commonwealth or the defense. Where a witness is equally available to both sides and neither side calls that witness, no inference may be drawn against either side. A witness may not be called for many reasons, and *as an example*, one of these many reasons may be that neither side has faith in the credibility of that witness because the potential witness has consistently fluctuated by giving different versions of what happened. (emphasis added)

Sam argues that both the ruling and the charge were in error and that counsel was ineffective for failing to preserve these claims.

In *Commonwealth v. Jones*, 455 Pa. 488, 495, 317 A.2d 233, 237 (1974), we stated the "missing witness" inference rule as follows:

> " '[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.' " (citations omitted)

*See Also Commonwealth v. Manigault*, 501 Pa. 506, 510–11, 462 A.2d 239, 241 (1983).

On the basis of the record before us, to allow such an inference would have been error since the record is devoid of any evidence that the witness was available only to the Commonwealth. In fact, the record indicates that she was hostile to the prosecution and offered to testify for the defense. *Commonwealth v. Harley*, 275 Pa.Super. 407, 413, 418 A.2d 1354, 1357 (1980) (no negative inference may be drawn from the failure of a party to call a particular witness where the witness is so hostile or prejudiced against the party expected

to call him that there is a small possibility of obtaining unbiased truth). Counsel was not ineffective for failing to preserve these claims; they have no merit.

██ Appellant also contends that it was error for the Commonwealth to elicit hearsay testimony about his wife. His argument is that defense counsel was ineffective for failing to object when the prosecutor improperly elicited hearsay testimony that his wife telephoned prospective witnesses and asked them to change their testimony. While the testimony was irrelevant and hearsay (and clearly not admissible), we conclude that no harm resulted from this error. There was no evidence presented which linked Sam to the alleged tampering. Nor is there anything in the record to indicate that he even knew the calls were being made. He has failed to demonstrate how the outcome at trial would have been different if this evidence had not been admitted.

## V.

██ The two remaining issues raised by appellant involve the penalty phase of trial. First, appellant claims that defense counsel was ineffective for failing to present any evidence of mitigating circumstances. Sam directed counsel not to introduce or argue such evidence; he now argues that his attorney should have defied his instruction and argued the evidence. He claims that no attorney has the discretion, in a death penalty case, to follow his client's specific instruction not to argue mitigating circumstances. According to Sam, a criminal defendant does not have the right to choose death rather than life imprisonment. In support of his contention, he cites Pennsylvania Rules of Professional Conduct, Rule 1.2 and Comment.

Rule 1.2 of the Pennsylvania Rules of Professional Conduct provides in pertinent part:

(a) *A lawyer shall abide by a client's decisions concerning the objectives of representation,* ... and shall consult with the client as to the means by which they are to be pursued ... In a criminal case, the lawyer shall abide by the

client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify. (emphasis added)

The Comment to Rule 1.2 provides in pertinent part:

*The client has ultimate authority to determine the purposes to be served by legal representation*, within the limits imposed by law and the lawyer's professional obligations. (emphasis added)

Nothing in Rule 1.2 or the Comment supports Sam's claim. The rule clearly states that the client decides the objectives of representation. The attorney may consult with the client about the best means by which to pursue those objectives, but has no right, under the rule, to override what the client deems to be in his best interest.

Neither the sentencing statute, 42 Pa.C.S. § 9711 nor case law supports his argument that an attorney has a duty to disobey his client's wishes in the penalty phase of a capital case. Moreover, the record makes it exceedingly clear that Sam knowingly and intelligently, and with full explanation and understanding of the consequences, waived his right to have mitigating evidence argued. The trial court engaged in an extensive colloquy about this matter. Defense counsel stated for the record the mitigating circumstances that he would have argued. Sam's wife testified at length about his character, and the difficult life he had led. He was afforded every opportunity to change his mind about this decision.

■■■ A criminal defendant has the right to decide whether mitigating evidence will be presented on his behalf. We will not remove that right and compel admission of such evidence. Defense counsel has no duty to introduce and argue evidence of mitigating circumstances where his client has specifically directed otherwise. *Cf. Commonwealth v. Tedford*, 523 Pa. 305, 567 A.2d 610 (1989) (trial court has no duty to compel introduction of mitigating evidence at sentencing phase of trial where defendant has specifically instructed counsel not to present such evidence); *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987) (ineffectiveness of counsel will not be

presumed simply because no mitigating evidence was introduced at the sentencing phase of capital case).

The last penalty phase claim is that the trial judge impermissibly used the age of the two-year-old victim as the reason for imposing the death sentence for her murder. At the time of trial, the sentencing statute had been amended to add as an aggravating circumstance the murder of a person under the age of sixteen years, but that amendment did not apply here because it was enacted after the instant murders. The trial court stated, on the record, that it had found the existence of *one* aggravating factor—the commission of multiple first degree murders—and no mitigating factors for the child's murder. The evidence clearly supports this finding. The trial court properly imposed the death sentence for the murder of this child.

 Finally, we have thoroughly reviewed the record and conclude that the evidence supports the findings of aggravating circumstances made by the trial court.[1] We have also conducted the proportionality review required by 42 Pa.Cons. Stat.Ann. § 9711(h)(3)(iii) and find no basis to conclude that the penalty imposed is excessive or disproportionate to the sentence imposed in similar cases. *See Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08 (1984). Likewise, the record does not provide any grounds for us to find that the sentences of death were the product of "passion, prejudice or any other arbitrary factor". *See* 42 Pa.C.S. § 9711(h)(3)(i). Since the sentences of death in this case comply with the concerns in the statute, the sentences must be affirmed.

Judgments of sentence affirmed.[2]

1. In reference to the murder of Sou Ing, the court specifically found two aggravating circumstances: the commission of multiple homicides, 42 Pa.C.S. § 9711(d)(10), and the creation of serious risk of death to others, 42 Pa.C.S. § 9711(d)(7). For each of the other two murders, the court found the existence of one aggravating circumstance: the commission of multiple homicides. As stated above, it found no mitigating circumstances for any of the killings.

2. The Prothonotary is directed to transmit a full and complete record of the trial, sentencing hearing, imposition of sentence, and review by the Court to the Governor. 42 Pa.C.S. § 9711(i).

ZAPPALA, J., did not participate in the consideration or the decision of this case.

LARSEN, J., did not participate in the decision of this case.