J-S64017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL G. PROTOS, | |
| Appellant | No. 312 WDA 2014 |

Appeal from the PCRA Order Entered January 29, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000700-2007

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 06, 2014**

Appellant, Michael G. Protos, appeals from the January 29, 2014 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant asserts that his trial attorney provided ineffective assistance of counsel (IAC) on multiple occasions.  He also claims that the Commonwealth failed to disclose exculpatory evidence.  After careful review, we affirm.

The certified record supports the following summary of the facts adduced at trial:

> [Appellant] and Marci Protos, A.J.'s mother, were married in November, 1993.  A.J. is the stepchild of [Appellant] as a consequence of the marriage.  At the time of the marriage A.J. was four years of age….  After their marriage Marci Protos and [Appellant] resided with A.J. in Star Junction, Fayette County, Pennsylvania.  Marci Protos gave birth to two additional children….  The Protos family continued to reside in Star Junction

until 1999 when they moved to … Perryopolis, Fayette County, where Marci and the three children continued to reside.

…

During the course of the marriage[,] Marci Protos worked as a bartender at Pizon's Tavern several nights a week, initially from Wednesday through Sunday and later from Wednesday through Saturday. Her shift at Pizon's began at 7:00 P.M. and continued until 2:30 A.M. While Marci Protos was at work[,] [Appellant] watched the children.

When A.J. was seven years of age and the parties were residing in Star Junction[,] [Appellant] began to engage in inappropriate sexual conduct with her. While Marci was at work[,] [Appellant] would enter A.J.'s bedroom with nothing on except a towel wrapped around his waist while A.J. was sleeping or attempting to sleep. [Appellant] would lie down on the bed with A.J., play with her hair, place her head on his stomach and would then place his penis against her mouth. [Appellant]'s actions in entering A.J.'s bedroom and touching her with his penis occurred on several occasions continuing until A.J. was eight to nine years of age[, when] she wrote a note to her mother indicating that she believed [Appellant] was sexually abusing her. After she wrote the note to her mother[,] who then confronted [Appellant], [Appellant]'s inappropriate conduct with A.J. ceased for a period of time.

When A.J. was twelve years old, [Appellant] left the home … and moved into the one-bedroom apartment in Perryopolis. Since Marci worked weekends at Pizon's she would drop the children at [Appellant]'s apartment for the weekend.

At [Appellant]'s apartment[,] the two younger sisters slept in the living room and A.J. slept on the floor in [Appellant]'s bedroom. In [Appellant]'s bedroom, [Appellant] would lie on top of her in his underwear and rub his penis on her vagina. Over time[, Appellant]'s conduct culminated in actual sexual intercourse with the child. [Appellant] would take off the child's shorts, wet his penis or lick her vagina, putting his tongue inside her vagina, then engage in vaginal intercourse with the child. According to A.J.[,] [Appellant] would engage in this conduct "sometimes once a week, sometimes not and sometimes more."

[Appellant] continued in his conduct of licking A.J.'s vagina and having vaginal intercourse with the child at the apartment in

Perryopolis, at the mobile home in Fayette City, at the farmhouse near Virgin Run and at Cope Road when he returned home.

At times the child would resist [Appellant]'s attempts to have intercourse with her by holding her legs together and by attempting to push him off of her. On these times, [Appellant] would hold her arms down, forcibly remove her shorts and forcibly have sexual intercourse with her. On one occasion, [Appellant] ripped her shorts in taking them off of her. As A.J. got older, her resistance to [Appellant]'s demand for sexual intercourse increased.

When A.J. was sixteen years old[,] in the summer of 2006[,] she finally told a neighbor boy about her stepfather forcing her to have sexual intercourse[.] [A]nd[,] on September 15, 2006, she told her mother.

Marci Protos confronted [Appellant] with A.J.'s allegations that he had engaged in sexual intercourse with his stepdaughter. In response, [Appellant] admitted that he did but stated that he's sick and that he[] needed mental help. [Appellant]'s sister, Andrea Haller, learned of the allegations from Marci Protos. Andrea subsequently related to their mother, Angie Protos, the allegations that [Appellant] had engaged in sexual intercourse with A.J. Within a few days after Andrea Haller and Angie Protos learned of the allegations, [Appellant] visited his mother's home and was confronted by his mother and sister about whether he had actually engaged in sexual intercourse with A.J. [Appellant] thereupon confessed to his sister and mother that he had engaged in sexual intercourse with the child.

[Appellant] subsequently wrote letters of apology to Marci Protos and to A.J.

The parties stipulated that the child, A.J., is not and never was married to [Appellant] and t[o] [Appellant]'s date of birth….

PCRA Court Opinion (PCO), 1/29/14, at 3-6 (citations to record omitted).

Following Appellant's jury trial, he was convicted of rape, multiple counts of involuntary deviate sexual intercourse, multiple counts of aggravated indecent assault, statutory sexual assault, sexual assault, and

multiple counts of indecent assault. Appellant was sentenced to an aggregate term of 10 – 30 years' incarceration for these offenses. Appellant filed timely post-sentence motions which were denied by the trial court.

Thereafter, Appellant filed a timely notice of appeal. On July 28, 2010, this Court affirmed Appellant's judgment of sentence in a memorandum opinion, and our Supreme Court subsequently denied his petition for allowance of appeal on January 12, 2011. **Commonwealth v. Protos**, 6 A.3d 576 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 16 A.3d 503 (Pa. 2011).

Appellant filed a timely PCRA petition on January 9, 2012. The PCRA court held an evidentiary hearing to address the claim raised therein on June 26, 2012. On January 29, 2014, the PCRA court issued an opinion and order denying Appellant's PCRA petition. Appellant then filed a timely notice of appeal from that order on February 21, 2014. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant now presents the following questions for our review:

a. Whether Appellant's trial counsel was ineffective due to his failure to call character witnesses, failure to call witnesses that could have refuted the truthfulness of Commonwealth witnesses, failure to obtain a ruling from the Trial Court judge on trial attorney's Motion for Mistrial, and failure to object to improper closing arguments[?]

b. Whether Appellant is entitled to post conviction relief due to the Commonwealth's failure to disclose exculpatory evidence which is a violation of the Pennsylvania and United States Constitutions[?]

Appellant's Brief at 5.

Initially, we note that "[i]n PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error." ***Commonwealth v. Pitts***, 981 A.2d 875, 878 (Pa. 2009). Appellant's first claim is, in fact, four distinct allegations of the ineffective assistance of his trial counsel. We will address each in the order in which they were presented.

> In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylvania, we have applied the ***Strickland*** test by looking to three elements: the petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (1987). Additionally, we note, the Sixth Amendment right to counsel is recognized "not for its own sake," but because of the effect it has on the accused's right to a fair trial. ***See Lockhart v. Fretwell***, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); ***see also Strickland***, 466 U.S. at 689, 104 S.Ct. 2052. For these reasons, counsel is presumed to have rendered effective assistance. Finally, both the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ***Strickland*** test, the court may proceed to that element first. ***Strickland***, ***supra***; ***Commonwealth v. Albrecht***, 554 Pa. 31, 720 A.2d 693, 701 (1998). Counsel cannot be deemed ineffective for failing to raise

a meritless claim. ***Commonwealth v. Jones***, 590 Pa. 202, 912 A.2d 268, 278 (2006).

***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1117-18 (Pa. 2012).

*Failure to Call Character Witnesses*

Appellant's first IAC claim posits that his trial counsel was ineffective for failing to call character witnesses, failing to contact or interview any character witnesses before trial, and for failing to discuss with Appellant before trial his right to call character witnesses.[1] At the PCRA hearing, Appellant presented three potential witnesses who he contended could have provided character evidence on his behalf at trial. Trial counsel testified that, in his experience, character witnesses were not beneficial to criminal defendants. Furthermore, trial counsel said his trial strategy was to rely solely on Appellant's testimony, because he believed that Appellant was likely to be a credible witness in the eyes of the jury.

> When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the ***Strickland*** test by establishing that:
>
> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

_____

[1] However, he did discuss Appellant's right to call character witnesses with Appellant when prompted to do so by the Court on the second day of trial.

- 6 -

***Commonwealth v. Johnson***, 966 A.2d 523, 536 (Pa. 2009) (quoting

***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007)).

The PCRA court determined that Appellant did not demonstrate trial

counsel's failure to call the three witnesses prejudiced Appellant.  The court

explained:

> [PCRA] counsel presented three persons at the [PCRA]
> [h]earing to indicate that they would have been willing to testify
> as character witnesses had they been called at trial.  These
> include Lynn Michelle Protos, [Appellant]'s wife, Derrick
> Basinger, [Appellant]'s brother-in-law, and Hazel Blaney.  From
> the testimony presented by these witnesses this Court is not
> convinced that any of the witnesses would have been able to
> testify as to the reputation of [Appellant] in the general
> community for being a peaceful and law-abiding citizen as would
> require a character witness charge to be given by the Court to
> the jury.  The witnesses basically testified that they knew
> [Appellant] and that he was a good person, [they did] not
> [present] reputation testimony.

PCO, at 11.

Generally, "[e]vidence of a person's character or character trait is not

admissible to prove that on a particular occasion the person acted in

accordance with the character or trait."  Pa.R.E. 404 (a)(1).  However, in a

criminal case, "a defendant may offer evidence of the defendant's pertinent

trait…."  Pa.R.E. 404 (a)(2)(A).  As this Court has explained:

> It is clearly established that evidence of good character is
> to be regarded as evidence of substantive fact just as any other
> evidence tending to establish innocence and may be considered
> by the jury in connection with all of the evidence presented in
> the case on the general issue of guilt or innocence.  "Evidence of
> good character is substantive and positive evidence, not a mere
> make weight to be considered in a doubtful case, and, ... is an
> independent factor which may of itself engender reasonable

doubt or produce a conclusion of innocence." ***Commonwealth v. Gaines***, 167 Pa.Super. 485, 492, 75 A.2d 617, 620 (1950) (quoting ***Commonwealth v. Padden***, 160 Pa.Super. 269, 275, 50 A.2d 722, 725 (1947)). *Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged*.

***Commonwealth v. Luther***, 463 A.2d 1073, 1077 (Pa. Super. 1983) (some citations omitted) (emphasis added).

We agree with the PCRA court that Appellant failed to meet his burden to show that the proposed character witnesses would have testified to a "pertinent" character trait and, therefore, that Appellant was prejudiced by their absence. Pa.R.E. 404(a)(2)(A). For instance, during the direct examination of Lynn Michelle Protos (Appellant's wife at the time trial), PCRA counsel asked her, "Would you have testified regarding your husband's good reputation in the community?" N.T., 6/26/12, at 35. Mrs. Protos replied, "Yes." ***Id***. However, PCRA counsel did not attempt to elicit, nor did Mrs. Protos ever state, to what character trait, let alone to what "pertinent" character trait, Mrs. Protos could or would have been able to provide testimony.

Similarly, Derrick Basinger failed to identify a pertinent character trait. ***Id.*** at 46-49. The testimony of Hazel Blaney was also deficient in the same manner. Indeed, not only did Ms. Blaney fail to testify regarding a pertinent character trait, cross-examination revealed that she could not address Appellant's reputation in the community at all. ***Id.*** at 46. Thus, after reviewing the testimony presented at the PCRA hearing, and the applicable

case law and rules regarding reputation testimony, we conclude that the PCRA court's decision was supported by the record and free of legal error.

### *Failure to Call Dr. Scott Tracy*

Next, Appellant posits that his trial counsel provided IAC by failing to call Dr. Scott Tracy to refute the veracity of the testimony provided by Appellant's mother, sister, and ex-wife (the victim's mother), all Commonwealth witnesses. Appellant premises his claim as follows:

> During Appellant's trial, the Commonwealth's witnesses testified that … Appellant was attending therapy sessions regarding sexual issues with Dr. Scott Tracy. Specifically, … Appellant's mother testified that "she [Appellant's ex-wife] wanted him to go for therapy to a specialist that dealt with that type of problem" [N.T., 5/8/2008-5/13/2008, at 114]. Later, the following dialogue took place between the prosecutor and … Appellant's mother.

> Q. So then at some point in October or so of 2006 he [Appellant] began going to the therapist with you —

> A. Yes.

> Q. - to talk about not only the grief but the sexual things that he had talked about?

> A. Yes. *Id.* [at 115-16.]

> Finally, Appellant's Mother testified when asked how … Appellant would proceed with therapy[:]

> []I mean he was extremely ashamed and repentant and he took it very hard emotionally, and he, you know we assume that he was going to go get help. That's the direction that we were looking for, that he would go and get counseling and do what he could do, you know, without having to go and make it public or be put under arrest for it, to try and handle with therapists and within the family and not make it public.[] *Id.* [at 117].

Appellant's sister also testified that she said [*sic*] in with a grief therapy session and "then also [Appellant] was supposed to speak with [Dr. Tracy] about sexual molestation. That was supposed to be his agreement with [his ex[-]wife] to be able to see [his] kids" ***Id.*** [at 100]. Also, when asked whether … Appellant would have a separate session with the counselor, … Appellant's sister stated "yes" and that when asked whether this session would regard other sexual issues, she stated "yes" again. ***Id.*** Finally, Appellant's ex[-]wife testified at trial when asked if Appellant was going to grief counseling therapy due to his father's suicide, the ex[-]wife stated "No, he […  Appellant] told me he needed therapy because he was sick. He had things done to him when he was a child and he's sick because of it. That's why he, you know, I assume that's why he did what he did and he told me he needed therapy, he was sick." ***Id.*** [at 93].

Appellant's Brief 19-20.

Dr. Tracy, a psychotherapist, testified at the PCRA hearing that both Appellant's mother and sister were once his patients. N.T., 6/26/12, at 6-7. Appellant "was not" his patient. ***Id.*** at 8. Dr. Tracy saw Appellant "as part of family therapy" with his sister and mother. ***Id.*** at 7. Dr. Tracy explained:

We frequently employ family therapy in grief counsel modalities. In fact[,] we really attempt to employ family therapy in all treatment modalities. So [Appellant] participated in some sessions with his mother as we were helping her debrief the experience, the horrific experiences she had from the suicide of her husband.

***Id.*** at 9.

Dr. Tracy further testified that he did "not recall [Appellant's] disclosing to me or confessing to me any type of inappropriate conduct with his daughter. I do not recall [Appellant]'s mother['s] disclosing any of that information to me as well and … [Appellant] was not an identified patient." ***Id.*** Moreover, Dr. Tracy indicated in his capacity as a psychotherapist, he

was mandated by law to report any evidence of child abuse or neglect. *Id.* at 10.

Appellant argues that "[d]espite the testimony of … Appellant's mother, sister, and ex[-]wife regarding therapy sessions with Dr. Scott Tracy, Dr. Tracy was never called by trial counsel to dispute any of the []allegations that … Appellant had therapy regarding sexual issues." Appellant's Brief at 20. He contends that "the prosecution witnesses testified that … Appellant had attended therapy sessions with them and that … Appellant spoke about sexual issues during these sessions." *Id.*

There is no arguable merit to Appellant's claim. There was testimony that Appellant's mother, sister, and ex-wife *wanted* Appellant to attend therapy, and that Appellant told them that he *intended* to seek therapy after he admitted to them his sexual abuse of the victim. Appellant fails, however, to identify any statement made by a prosecution witness that alleged that he admitted to sexually abusing the victim while attending family therapy sessions with his sister and mother. Simply put, Dr. Tracy's PCRA hearing testimony was consistent with the trial testimony of the Commonwealth witnesses. Consequently, Appellant was not prejudiced by his trial counsel's failure to call the doctor as a witness at his trial. Thus, we

conclude that the PCRA court's denial of this claim is supported by the record and free of legal error.[2]

### Failure to Obtain a Ruling on Appellant's Motion for a Mistrial

In Appellant's next IAC claim, he asserts that "trial counsel did not obtain a ruling from the trial judge regarding his motion for mistrial during the trial." Appellant's Brief at 22. As a result, he claims he was prejudiced because, "but for this error, the appeal would possibly have been different." *Id.* at 23.

In our memorandum opinion affirming Appellant's judgment of sentence on direct appeal, this Court stated:

> We point out that, while the notes of testimony suggest that the trial court did not expressly deny Appellant's request for a mistrial, Appellant, the Commonwealth, and the trial court all agree that the court denied the request. We, therefore, will address Appellant's claim as though the court denied the motion for a mistrial.

*Commonwealth v. Protos*, No. 654 WDA 2009, unpublished memorandum at 5 (Pa. Super. filed July 28, 2010).

_____

[2] Within the argument section of Appellant's brief addressing this claim, Appellant also contends that his trial counsel rendered IAC by failing to call an expert witness to testify as to Appellant's propensity to carry out the alleged crimes. Appellant's Brief at 21-22. However, Appellant's claim is purely hypothetical. Appellant fails to identify the expert witness who he would call to provide such testimony, and Appellant did not provide any such witness at his PCRA hearing. Accordingly, this claim fails under every element of the *Johnson*/*Washington* test for IAC premised upon the failure to call a witness. *See Johnson*, 966 A.2d at 536. Accordingly, the PCRA court's finding that this claim was without merit is supported by the record and free of legal error.

Appellant cannot demonstrate he was prejudiced by trial counsel's failure to obtain a ruling on his motion for a mistrial. It is clear that this Court overlooked the fact that such a ruling did not appear on the record, and proceeded to address the merits of Appellant's motion despite the defect in the record. Thus, Appellant was not prejudiced by the defect in the record. Consequently, Appellant's derivative claim regarding trial counsel's failure to perfect the defect in the record did not prejudice Appellant on direct appeal. Accordingly, we conclude that the PCRA court's finding that this IAC claim was meritless is supported by the record and free of legal error.

### *Failure to Object to Prosecutor's Improper Closing Arguments*

In Appellant's final IAC claim, he asserts that his trial counsel failed to object to several comments made by the prosecutor during closing arguments. Appellant explains:

> During closing arguments the prosecuting attorney stated twice that … Appellant was "in denial." He also stated that a portion of … Appellant's testimony was a "bald faced lie" and used the phrase "in his own warped sick mind" when talking about … Appellant. The prosecuting attorney also used the pronoun "I" during his closing arguments and this interjected his opinion in the matter.

Appellant's Brief at 23-24 (internal citations omitted). Appellant's trial counsel did not object to any of these statements.

Whether Appellant's IAC claim has any arguable merit depends upon whether the prosecutor's comments were improper.

The Commonwealth is entitled to comment during closing arguments on matters that might otherwise be objectionable or even outright misconduct, where such comments constitute fair response to matters raised by the defense, or where they are merely responsive to actual evidence admitted during a trial. ***See Commonwealth v. Trivigno***, 561 Pa. 232, 750 A.2d 243, 249 (2000) (plurality opinion) ("A remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel") (citing ***United States v. Robinson***, 485 U.S. 25, 31, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)); ***Commonwealth v. Marrero***, 546 Pa. 596, 687 A.2d 1102, 1109 (1996). Furthermore, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." ***Commonwealth v. Jones***, 542 Pa. 464, 668 A.2d 491, 514 (1995).

***Commonwealth v. Culver***, 51 A.3d 866, 876 (Pa. Super. 2012).

The PCRA court concluded that the prosecutor's comments in this case were not improper, and that the prosecutor's commentary on Appellant's credibility was a fair response to the arguments presented during the defense's closing argument:

A large portion of defense counsel's closing argument was properly directed at the credibility of the Commonwealth's witnesses. It was these witnesses upon which the Commonwealth's case rested. Defense counsel in his closing arguments pointed out inconsistencies in [the] testimony and directed the jury to consider in their deliberations who they thought was lying.

It is apparent that the District Attorney's attack on the credibility of [Appellant] was motivated by and was commensurate with the prior attack on the credibility of the Commonwealth witnesses. That being the case, the complaint now made as to the District Attorney's comment about "lying" in his summation is of little merit. ***Commonwealth v. Johnson***, 527 Pa. 118, 538 A.2d 1303 (1991).

After a thorough review of the closing arguments made by the District Attorney, the Court finds that the comments made

- 14 -

were in fair response to the argument of defense counsel. The Commonwealth is free to argue that the evidence leads to guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence. ***Commonwealth v. Sam***, 535 Pa. 350, 635 A.2d 603 (1993).

The prosecutor's words were not designed to inflame the passions of the jury or to place the rights of the victim over the rights of the accused. The prosecutor's comments were neither unfair nor prejudicial, but, merely reinforced the fact that the jury had been presented with conflicting stories. Because [Appellant]'s claim lacks merit, we cannot find counsel ineffective for failing to object to these remarks.

Furthermore, the comments made by the prosecutor were not such that the unavoidable effect of such would be to prejudice the jury, forming in their minds a fixed bias and a hostility toward [Appellant] such that they could not weigh the evidence objectively and render a true verdict.

PCO, at 23-24.

We agree with the PCRA court. The Commonwealth and the defense presented incompatible accounts of Appellant's sexual abuse of A.J. The prosecutor's statements, indicating that Appellant lied when he testified, were "based on the evidence or proper inferences therefrom[,]" because the victim testified to Appellant's sexual abuse of her and because multiple witnesses testified that Appellant confessed to having sexually abused the victim. ***Culver***, 51 A.3d at 876 (quoting ***Jones***, 668 A.2d at 514). Nevertheless, when the prosecutor specifically used the phrase "bald faced lie[,]" Appellant's defense counsel objected and the trial court sustained that objection. N.T. Opening and Closing Statements, 5/8/08-5/13/08, at 50. Trial counsel cannot be held ineffective for failing to object to a statement when he, in fact, did object to that statement.

Moreover, the prosecutor's use of the phrase, "in his own warped sick mind[]" while discussing Appellant was an isolated instance of oratorical flair that does not accurately reflect the overall tone of the Commonwealth's argument, and was unlikely to create a fixed bias and hostility in the jury's minds against him. *Commonwealth v. Hutchinson*, 25 A.3d 277, 307 (Pa. 2011) ("Any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered."); *see also Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008) ("[P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.") (internal quotation marks omitted).

Finally, the prosecutor's repeated use of the pronoun "I" does not rise to the level of prejudicial prosecutorial misconduct because the use of that pronoun is so ubiquitous in common speech. Appellant fails to cite any authority that suggests that the mere use, or even the repeated use, of the pronoun "I," constitutes prosecutorial conduct of such a level to create "a fixed bias and hostility toward" Appellant. *Holley*, *supra*. It is apparent from the record that the prosecutor did not intend his repeated use of the term "I" as an expression of personal opinion on a relevant matter of

- 16 -

credibility or fact. Indeed, this was often demonstrated by the context in which the term was used.[3] Accordingly, we conclude the PCRA court's denial of Appellant's final IAC claim was supported by the record and free of legal error.

### Failure to Disclose Exculpatory Evidence

Finally, Appellant asserts that the Commonwealth violated his Fourteenth Amendment due process rights when it failed to disclose exculpatory evidence. Appellant bases his claim on the testimony given by

_____

[3] For instance, the prosecutor began his closing argument as follows:

> **I** am hopefully not going to be as lengthy in this as **I**'m sure maybe you're anxious to get this case and to deliberate in this matter and, again, **I** certainly thank you for your being here last week and even more so for your being here today to conclude this matter. **I** know it's a sacrifice for many of you and certainly **I** appreciate it and the rest of our office and **I**'m sure the Court as well appreciates your being here and listening to this case because obviously this wasn't an easy case to listen to and **I**'m sure it couldn't have been more unpleasant to listen to the details of [A.J.]'s testimony to you as to have over a period of some eight years that she was continually touched, licked and penetrated by the penis of the Defendant, Michael Protos, her stepfather in this case, and as much as Mr. Mehalov would like other people to be on trial today, there's only one person on trial and that is Michael Protos.

N.T. Opening and Closing Statements, 5/8/08-5/13/08, at 47-48 (emphasis added). Obviously the use of "I" in this context was *literally* personal opinion, but it was not personal opinion regarding issues of credibility or material fact. Elsewhere, it was not personal opinion at all, such as when the prosecutor stated, "I would suggest to you…" or, "I'll let you judge" before discussing the testimonial evidence and the inferences to be drawn therefrom. ***Id.*** at 49.

the arresting officer regarding a statement Dr. Tracy made about Appellant to that officer. The officer admitted that the statement did not appear in the police report provided to Appellant. Appellant claims that this statement could have been used to impeach the testimony of the Commonwealth's witnesses.

> Under **Brady** [**v. Maryland**, 373 U.S. 83 (1963)], the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. "[T]o establish a **Brady** violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." **Commonwealth v. Gibson**, 597 Pa. 402, 951 A.2d 1110, 1126 (2008).
>
> The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed evidence. **See Commonwealth v. Porter**, 556 Pa. 301, 728 A.2d 890, 898 (1999). The United States Supreme Court has held, "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." **United States v. Bagley**, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (footnote omitted). Similarly, this Court has limited the prosecution's disclosure duty such that it does not provide a general right of discovery to defendants. **See Commonwealth v. Counterman**, 553 Pa. 370, 719 A.2d 284, 297 (1998). Moreover, we have held that the prosecution is not obligated to reveal evidence relating to fruitless leads followed by investigators. **See Commonwealth v. Crews**, 536 Pa. 508, 640 A.2d 395, 406 (1994).
>
> "To satisfy the prejudice inquiry, the evidence suppressed must have been material to guilt or punishment." **Gibson**, 951 A.2d at 1126-1127 (Pa. 2008). …[M]ateriality extends to evidence affecting the credibility of witnesses, rather than merely to purely exculpatory evidence. **See Giglio v. United States**, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence

affecting credibility falls within this general rule."). Moreover, we have held that the protection of **Brady** extends to the defendant's ability to investigate alternate defense theories and to formulate trial strategy. **See Commonwealth v. Green**, 536 Pa. 599, 640 A.2d 1242, 1245 (1994) (holding that courts must "consider any adverse effect that the prosecutor's failure to disclose might have had on not only the presentation of the defense at trial, but the preparation of the defense as well."). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Kyles v. Whitley**, 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted).

**Com. v. Cam Ly**, 980 A.2d 61, 75-76 (Pa. 2009).

Appellant describes the undisclosed statement as follows: "Specifically, the arresting officer stated that he spoke to Dr. Scott Tracy regarding the nature of the investigation and that during the conversation *the doctor denied that … Appellant made allegations to the arresting officer*." Appellant's Brief at 26 (emphasis added). Later, Appellant states that "the arresting officer did not disclose that he had spoken to Dr. Tracy and did not disclose that *the doctor stated that … Appellant made no allegations to the arresting officer*." **Id.** (emphasis added). He then argues that, "[T]his evidence is favorable to Appellant as it contradicts the prosecuting witnesses['] testimony that Appellant's interaction with Dr. Tracy was a direct result of the alleged crimes." **Id.**

Appellant's explanation of this issue is nearly incomprehensible. Appellant does not explain the nature of the "allegations" to which he refers. Usually, one does not make "allegations" against oneself – so it is not

entirely clear if Appellant is claiming that Dr. Tracy's statement was that Appellant did not *admit* to the doctor that he sexually molested A.J., although that is the only rational argument for a ***Brady*** claim that we can ascertain from Appellant's puzzling terminology.

Assuming that is the nature of his ***Brady*** claim, Appellant is still not entitled to relief. Appellant cannot demonstrate that prejudice resulted from the Commonwealth's failure to disclose Dr. Tracy's statement. As noted above with regard the IAC claim Appellant raises involving Dr. Tracy, the doctor could not have provided testimony to impeach any of the Commonwealth's witnesses. None of the Commonwealth's witnesses testified that Appellant attended therapy with Dr. Tracy for the purpose of dealing with his molestation of the victim. Therefore, the Commonwealth's failure to disclose Dr. Tracy's statement to the arresting officer was not potential impeachment evidence that could be considered "material to guilt or punishment." ***Cam Ly***, 980 A.2d at 76. Accordingly, Appellant's ***Brady*** claim lacks merit.

Order ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/06/2014

- 20 -